CASE 78—EQUITY—APRIL 27, 1881.

# Bohon, &c., v. Barrett's ex'r.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The court erred in sustaining the demurrer to the petition.
2. The *fourth* clause of John W. Barrett's will creates a precatory trust in favor of appellant, Lillie Bohon, late Barrett. When she performed the requirements of the will, the executor had no discretion, but must pay to her the amount indicated by it.
3. The discretion given to the executor is only as to the mode of expending the money for her benefit, and settling it upon her.

F. T. FOX, W. LINDSAY, JAS. S. PIRTLE, AND E. F. TRABUE FOR APPELLANT.
1. The fourth clause of the testator's will contains two requests of the nominated executor: 1. That he should take charge of, raise, and educate Lillie Barrett in his family. 2. That he should, out of the funds in his hands, expend for her or settle upon her ten thousand dollars. This request was not to be binding, unless she should be obedient to Thomas Barrett and his wife, conduct herself according to their wishes, and not to marry without their consent. These and the other conditions she has fully performed.
2. A trust is created imposing upon the executor the duty of paying appellant the amount mentioned in the will. (7 Jurist, 705; 1 Vesey, jr., 272; *Ib.*, 474; 11 Clark & Fin., 548; 2 Spence's Eq. Ju., 67; 3 Mac. & G., 546; 1 Perry on Trusts, 112; 1 Vesey, jr., 483;

Bohon, &c., v. Barrett's ex'r.

2 Phillips, 192; 5 Cl. & Finnelly, 129; 1 H. R., 82; 1 Sim., N. S.,. 357; 32 Beav., 144; 1 Keen, 317; 2 Sim., 644; 9 Vesey, 322; 24 Beav., 145; 16 Jurist, 492; 1 Ambler, 520; 2 P. W., 547; 8 L. R. Eq. Cases, 673; Wigram on Wills, part 2, 221; 66 Penn. Rep., 400; 1 N. H., 217; 2 Barr., 132; 20 Penn., 268; Collins v. Carlisle, 7 B. Mon.,. 14; Caldwell v. Caldwell, 7 Bush, 376; 7 Simons, 664; Barclay v.. Dupuy, 6 B. Mon., 98; 98 Penn. St., 296; Ib., 432; 20 Ohio, 550; 5 Beav., 241; 2 Bro. C. C., 38; 8 Vesey; 98 Mass., 279; 2 Gratt., 1; 2. Barr., 129; 13 Pa. St., 253; 1 N. H., 217.)

GOODLOE, ROBERTS & HUMPHREY, AND BRECKINRIDGE &. SHELBY FOR APPELLEE. ·

1. It is clearly established that while trusts may be implied from the use· of precatory words, the courts will limit rather than extend the doctrine of raising trusts upon mere words of recommendation. (1 McC. Chy., 397; 19 Conn., 342; 21 Ib., 259; 18 Gratt., 541; 20 P. F. Smith, 153; 20 Penn., 268; 7 Wright, 445; 2 P. F. Smith, 219; Hill on Trustees, 68–93.)

The words must be imperative; the object and subject certain. (Perry on Trusts, 114; T. & R., 157; 3 Beav., 148; 2 Vesey, jr., 335 ;. 8 Ib., 380; 17 Ib., 255; 98 Mass., 277; 1 Metcalfe, 445; 3 Humphrey 631; 15 Ala., 296; 35 Vermont, 173; 17 Mo., 166; 6 Jones' Eq., 27 6 Simons, 568; 1 Ib., 543; 2 Ib., 267; 18 Beav., 272; 2 M. & K., 197; 26 Beav., 41; 1 Sim., 534; 27 Beav., 301; 19 Conn., 342; 18 Gratt., 541; 20 Penn., 268; 2 Barr., 129; 1 Harr., 253; 34 Beav., 513; 10· Sim., 1; 9 Ib., 319; 3 Barr., 148; 5 Sim., 22; 35 Ves., 35; 1 Harr., 445; Ib., 451; 4 Gray, 240; 2 Allen, 101; Leading Cas. Eq., vol. 2,. 1842.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

John W. Barrett took Lillie Beeler, when she was but three years of his age, to his home, caused her name to be· changed to Lillie Barrett, and adopted her.

From that time until his death he recognized and cared: for her as his own child.

He was unmarried, childless, and owned an estate worth. about $15,000 when he died.

For several years before his death he and his adopted child Lillie were domiciled with his brother, the appellee, Thos. L. Barrett, whose estate is alleged to be worth. $200,000.

Thus situated, he executed and published his last will and testament in this language:

"1st. I hereby appoint Thomas L. Barrett my executor, to execute this my last will, and I request A. J. Wood and Wm. J. Wood to give him the benefit of their advice so far as selling my real estate in Barren county, and in collecting what is due me in the counties of Hart, Barren, and Metcalfe, requires the same.

"2d. It is my will that out of the first means realized from my estate that he pay my just debts.

"3d. I desire that my executor shall, at such time, on such terms, and in such quantities as he may think best, sell all my real estate, of every kind, and wherever situated, and convey the same to the purchaser or purchasers by deed or deeds duly executed.

"4th. I devise all the residue of my estate, after the payment of my just debts, to my brother, Thomas L. Barrett, but it is my request of him (but not as a condition upon which this devise is to take effect) that he take charge of, raise and educate Lillie Barrett, who is now with me in his family, and that if she is obedient to him and his wife, Mary J. Barrett, and is governed by their advice and counsel, and conducts herself in such a manner as to merit the same, and does not marry without their consent and contrary to their advice, and she remains with my said brother and his wife, and is not taken from them, or does not voluntarily go away from them, or abandon their home, then I request him to expend for her benefit, in such manner, at such time, in such time, or to settle upon her in such way, at such time, and on such terms as he, in his judgment, may think her interest requires, the sum of $10,000; but these requests are not to be legally binding upon him, but I desire to leave

the same entirely to his discretion, and to make no require--
ment of him that would be legally binding upon him in a
court of equity or elsewhere—it being my wish to leave the
whole matter to his sense of right and discretion, he being
fully advised of my wishes concerning the said Lillie, and
also concerning the said sum of $10,000, which I request
him to use for her benefit on the conditions aforesaid, if he
sees fit to do so, and the condition of his family is such that
he can do so without embarrassment, but not otherwise."

The executor, Thos. L. Barrett, took charge of, raised,
and educated Lillie Barrett.  She complied in every respect
with the conditions of the will, and married without objec-
tion on his part.

The executor refused to expend, use, or settle upon her
any sum for her benefit.

And she and her husband instituted this action to compel
him to execute the alleged trust.  A demurrer was sustained
to the petition, and they have appealed.

The only question involved is the construction of the fore-
going will.

The doctrine of precatory trusts is well established.

They grow out of words of entreaty, wish, expectation,
request, or recommendation frequently employed in wills.

The meaning of the word precatory, according to its
ordinary use, does not embrace a command—it means be-
seeching, suppliant, prayerful.

In its primal sense, as descriptive of an act relative to a
right, it conveys the idea that the right is equivocal or un-
certain, because it impliedly depends on the will of another,
who is besought to exercise his power over it.

If such power were natural or independent of the testator,
then no command of his to exercise it could be enforced;

but where the power or discretion is created by will, it is subject to such limitations as the testator sees proper to impose, and whatever may be the character of the words which he uses to indicate his wish or will, whether preceptive or recommendatory, they are imperative—"the wish of a testator, like the request of a sovereign, being equivalent to a command."

His wishes and desires as to the disposition of his property after his death constitute *his will.* (Bent v. Herron, 66 Penn., 402.)

And although such desire is not expressed in mandatory language, yet if from the language used it can be inferred, with reasonable certainty, what the desire of the testator is, it will be treated by the courts as his commands, and executed accordingly. (Cary v. Cary, Sch. & Lef. Reports, 189.)

In section 112 of Perry on Trusts he says:

"Implied trusts are those that arise when trusts are not directly or expressly declared in terms; but the courts, from the whole transaction and the words used, *imply* or infer that it was the intention of the parties to create a trust. Courts seek for the intention of the parties, however informal or obscure the language may be; and if a trust can fairly be implied from the language used as the intention of the parties, the intention will be executed through the medium of a trust."

The authorities, both English and American, are conclusive, and in the main harmonious, that a trust will be created by such precatory words as "hope," "wish," "request," &c., if they be not so modified by the context as to amount to no more than mere suggestions, to be acted on or not, according to the caprice of the imme-

diate devisee, or negatived by other expressions indicating a contrary intention, and the subject and object be sufficiently certain.    (Hill on Trustees, page 92, and authorities there cited; Perry on Trusts, chapter 4, notes and authorities cited; 66 Penn., 402; 1 N. H., 228.)

Many of the decisions are somewhat difficult to reconcile from their diversity in construing precatory words, but it will be noted that this springs from the difference in the order of expression and the surroundings, which are scarcely ever the same in two testators.

Hence necessity evoked the rule that "every case must depend upon the construction of the particular will under consideration."    (18 Md., 165; 2 Vesey, jr., 634.)

The legal right to provide for the disposition of his property according to his own wish is unquestionable, and the only important point involved in the construction of this will is, has the testator by his words, viewed in their express and implied senses and according to all the light that the contexture of his will affords, shown how and for whom he desired his property disposed of after his death?

It is, in effect, insisted that the appellee took an absolute estate which vested immediately upon the death of the testator, and that this evidenced his intention not to create a trust in behalf of Lillie Barrett.

This position is untenable; for it is well settled that where a testator makes an *absolute* gift to one person, accompanying it with a request to appropriate a particular sum to the use of another, that the immediate devisee becomes a mere trustee to the extent of such sum.    (1 New Hamp., 228; Hill on Trustees, side page 71; Bernard v. Muisheell, 1 John., 276; 7 Ben. Mon., 14.)

An absolute gift does not contravene either an express or implied trust annexed to the gift, nor can the fact that an absolute devise precedes the location of the trust words in the will throw any light upon their construction, as it is a common thing to invest the legal title and trusteeship in the same person, who is to receive the benefit in the event of the failure of the trust. And, in addition to these general considerations, the provisions of the will directing the sale of his real estate are inconsistent with an absolute devise to Thos. L. Barrett.

It is not reasonable to suppose that the testator would devise to him the absolute title to the whole of his estate, yet request two gentlemen to give him the benefit of their advice as to the sales of the real estate and the collection of debts, and require him to make such sales, when it appears that he is a man of good mind and excellent business qualifications.

Nor is it in accord with the actions of men, explained by daily experience, for one man to give certain property absolutely to another, and at the same time require him to sell and convey it "at such time, on such terms, and in such quantities as he may think best," when the absolute gift implies all of those powers and invests the donee with such discretion. Besides, he was directed to sell and convey as executor, and this demonstrates that he was not intended to be invested with title to the real estate as devisee.

It must therefore be concluded that the directions to sell left the *manner* of sale discretionary with the executor, and were precautionary provisions to turn his estate into money and cause it to yield its value for the purpose of meeting the contemplated trust he had at heart and in his mind, and which he created and delicately confided to his brother for

execution by the fourth clause of the will on the conditions. therein named.    The language expressive of his strong confidence, and the unfettered freedom with which he sought to invest his brother in the exercise of discretion about the conditions annexed to his request, taken in its literal and restricted meaning, might form a gauze over his intention; but penetrate beneath the letter, and you find his intention breathing securely within the fortress builded around it by the real significancy of the body of his language.

What was uppermost in the purpose of John W. Barrett when he made this will?

He had so linked himself to the destiny of Lillie Barrett, who filled the places round and about him made vacant by his childless condition, as to cause him to entertain the tenderest affections for her.

He clearly designated her as the object of his bounty, plainly specified its character and amount, annexed the conditions upon which she, by her actions, might defeat it; constituted his executor the judge of her conduct; directed wherein it should be regulated by his views and wishes, and made provident preparation for the appropriation of the $10,000, which he requested him "to use for her benefit upon the conditions aforesaid."

And the conclusion is irresistible that he, in the event of her obedience so plainly contemplated and carefully provided for, intended her to have the benefit of the $10,000, if the condition of his executor's family should be such that he could use it for her without embarrassment.

The testator certainly never contemplated that the executor would attempt to disregard his request, and claim the $10,000 himself, without the concurrence of a single broken

condition upon her part, or the pressing necessities of financial embarrassment to drive him to do it upon his.

That he dedicated, upon conditions, two-thirds of his whole estate as the subject of the alleged trust, and charged his brother, to whom he devised the residue, with her maintenance and education, coupled with the fact that the brother did not need his bounty, furnish strong evidence of the purpose of the testator to create a trust in her behalf.

What else could he have meant by specifying the matters about which she was to be obedient, requiring of her years of submission to the control of Thos. L. Barrett and wife, and agreement with them in the formation of the sacred relation of marriage, hedging his bounty with a condition to prevent the interference of her kindred with the possession of her by his executor, and providing, in the event of her compliance with the enumerated conditions to the satisfaction of his executor, that he should expend the sum of $10,000 for her benefit.

Is all of this meaningless? as certainly it must be if no trust were intended, because no sale of his real estate, nor advice of friends relative thereto; no rules for the conduct of Lillie Barrett; no discretion about her obedience or the manner of the investment "as her interest requires;" no protection from the burden in the event of financial misfortune; and no request to use the $10,000 for her benefit on the conditions named were necessary if the executor were his sole devisee, and invested with the absolute title to all of his property, regardless of her obedience and consequent rights for the creation and preservation of which every sentence of the will was written, except less than four lines in the beginning of the fourth clause, and the provision for the payment of his debts.

The text-writers say that no testator will refer at all to any matter that he had not greatly at heart. If this be true doctrine, almost the whole of the provisions of this will evidence the great solicitude of the testator for Lillie Barrett.

And there is a meaning in his aggregate expressions with reference to her and the subject he sought to devote to her use, which obtrudes itself upon the mind with such force that escape from its recognition is impossible.

The language employed in defining the discretion of his brother is somewhat obscure and indirect, resulting from an attempt by the testator to maintain throughout his language a refined respect for his feelings, amounting almost to sentimentalism.

A peculiar and sacred confidence must be presumed to have existed between them.

It is shown by the courteous language in which the testator limits the exercise of his brother's discretion to the performance of the conditions upon her part; the manner of the appropriation of the $10,000 for her benefit; when and how the real estate should be sold; and to the condition of his family and finances when the period of application to her use of the $10,000 should arrive.

These matters were left entirely to his discretion. Courts were excluded, and "*his sense of right and discretion*" trusted alone because he was "*fully advised*" of the testator's "*wishes*" concerning "Lillie and the said sum of $10,000."

He confided the fullness of his wishes alone to his brother. Judging from the provisions of the will and the circumstances of the testator, those wishes must have been of the kindest character for her.

It requires no romantic stretch of the imagination to account for the use of general terms and the non-expression of the particulars of the delicate confidence of brothers. born of the same mother, reared around the same fireside, and in manhood associated under the same roof until one is. taken and the other left.

And in view of their relations and the peculiar language of the will, which exalt this trust so high above the usually guarded trusts, the slightest wish of the testator should be binding upon the conscience of his brother.

The terms "if he sees fit to do so," "I leave it to his sense of right," "entirely to his discretion," must be: regarded as the expressions of unreserved confidence in his brother's honor and discretion.

And construed in connection with the *thrice repeated* *request* to expend the sum of $10,000 for her benefit on the specified conditions, they appear to have been used to untrammel as far as possible the exercise of his discretion, which he must use to comply with, but not to defeat, the wishes of the testator.

The discretion was not intended to be arbitrary. Those terms do not relate to his power to make or not to make the expenditure according to his own caprice. In such a case as the present, where the utmost freedom is conferred in the exercise of the discretion, it is clear a court of equity would interfere and control the discretion where it is abused, abandoned, or refused to be exercised.

Such a discretion as is here conferred does not authorize the person invested with it to act "according to his arbitrary will." (Rose v. Stuyvesant, 8th John., 426; 8 Mass. Reps., 40.) It is in law a sound discretion, and he could no more abuse or corruptly refuse to exercise it and keep the $10,000,

because he is in terms exempted from judicial control, than if the courts were expressly requested to compel him to execute the trust.

It appears with certainty that Lillie Barrett is the object of the trust; that its subject is the $10,000 which the executor is requested to "expend," "settle upon," and "use for her benefit." · And it is scarcely less certain that the language used by the testator creates a precatory trust which is not so limited by any of the terms employed as to leave its execution to the whimseys or inconstancy of the appellee.

Wherefore, the judgment is reversed, and cause remanded with directions to overrule the demurrer, and for further proceedings consistent with this opinion.

Judge HINES dissenting.