CASE 52—PETITION EQUITY—APRIL 23.

# Webster, &c v. Wathen, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

PRECATORY TRUSTS.—Where a testatrix after devising all her estate to one of two sisters directed her to give to the other sister "any present that she may need and that my estate can afford," these words were too uncertain to create an enforceable trust. To create a trust it is not sufficient that the words of the testator can be construed as mandatory, and that the person intended to be the beneficiary is certain, but the subject to which the obligation relates must also be certain.

MOSES N. WEBSTER FOR APPELLANTS.

1. The object of the testatrix was clearly to give to Mrs. Webster such support and maintenance as the estate would bear, trusting Mrs. Wathen's discretion in the distribution thereof. And Mrs. Wathen could not refuse to exercise such discretion according to the true intent and meaning of the donor. (Tabor v. McIntire, 79 Ky., 505; Bohon v. Barret, 79 Ky., 378.)

2. A testator can not disinherit his heir, unless he devises the estate to some one else. (Tabor &c. v. McIntire, &c., 79 Ky., 505; 5 Leigh, 222.)

3. The paper in contest is a valid will. (Redfield on Wills, chap. 2, p. 4; Jarman on Wills, vol. 1, p. 1; Bouvier's Law Dictionary, "Wills.")

4. General legacies must yield to specific bequests. (Cameron v. Boyd's Adm'r, 4 Dana, 549.)

5. Intention must prevail; and every clause should be so construed as to give effect thereto if practicable, without contradiction. (Hunt v. Johnson, 10 B. M., 344.)

6. The words of a will are to be interpreted in their strict primary sense, unless the context shows that they were used in a popular or secondary sense. (Allen v. Vanmeter, 1 Met., 277.)

7. If from the language used it can be inferred with reasonable certainty what the desire of the testator is, it will be treated by the court as a command, and executed accordingly. (Cary v. Cary, Sch. & Lef. Rep., 189; Perry on Trusts, sec. 112; Hill on Trustees, p. 92 and authorities cited; 66 Pa., 402; 1 N. H., 228.)

J. W. CROAN on same side.

1. The language of the will of Lizzie Curd is mandatory, and clearly expresses the intention of the testatrix to secure to the plaintiff, Euphemia Webster, a comfortable maintenance out of the estate devised to Hettie Wathen, and charges the estate in her hands with a trust, and requires of her the active duty of looking after the condition of Mrs. Webster, and to furnish her out of the estate such portion as her necessities and comfortable maintenance shall annually require. (Bohon v. Barret, 79 Ky., 378; Major v. Herndon, 78 Ky., 123; Anderson v. Hall, 80 Ky., 91; Wager v. Wager, 96 N. Y., 174; McMurray et al, v. Stanley, 6 S. W. R., 412; Tabor v. McIntire, 79 Ky., 505; Perry on Trusts, sec. 112; Hill on Trustees, p. 92; Perry on Trusts, chap. 4, 66 Penn., 402; 1 N. H., 228; Green v. Johnson, 4 Bush, 167.)

2. A trustee acting unfaithfully toward beneficiary is liable for any injury resulting therefrom. (White v. Monsarat, 18 B. Mon., 814.)

3. Administrator with will annexed is a trustee and is personally liable. (Clemens v. Caldwell, 7 B. Mon., 174; King v. Beeler, 4 Bibb, 83; Berry v. Hamilton, 10 B. Mon., 135; O'Neal v. Beal, 10 B. Mon., 273.)

THOMAS G. POORE on same side in petition for rehearing.

FAIRLEIGH & STRAUS.for appellees.

The uncertainty as to the thing devised is fatal to appellants' contention that the words of the will create a trust in favor of Euphemia Webster. A gift declared by the testator to be unfettered, or where he recommends but does not enjoin, will not be encumbered with a trust, however strong the language of trust or recommendation may be, unless the amount of and character of the trust is certain and definite. (Major, &c., v. Herndon, &c., 78 Ky., 129; Bohon v. Barret, 79 Ky., 378; Sale v. Thornberry,

86 Ky., 266; Kneffler v. Shreve, 78 Ky., 297; Ender's Ex'ors v. Tasco, 11 Ky. Law Rep., 592.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The sole question in this case is whether or not the will of Lizzie Curd creates an enforceable trust in favor of the appellant Euphemia Webster.

The will reads as follows:

"St. Louis, July 8, 1883.

"Any other will or bequests that may be found shall be of no use to any one. This is my will: That if I die possessing any property of any kind, whether bonds, bank stock, money, jewelry, my watch, silverware, chinaware, pictures, books, furniture, or any other goods, I hereby will it all to my sister, Hettie Cunningham Wathen, to be hers; and to be used by her for her own benefit, and for her child, little Richard Wathen, or any other children she may have, and I wanted it secured to them. I want her to give any presents to my sister, Euphemia Cunningham Webster, that she may need, and that my estate can afford. I want Hettie, as far as possible, to look after my sister Euphemia's interests, and to protect her as far as lies in her power. I want Hettie to give (for me) to my dear little Albert Lee Cunningham the sum of one hundred dollars if he is living at the time of my death. . . . I request that Hettie shall give to Sallie and Hundley each the sum of one dollar in order to prevent them interfering with my will or requests. They are rich, and have been made so by the shrewd management of their mother, who influenced my father against me and my two sisters, Euphemia and Hettie, and impoverished to make them rich. I feel no bitterness towards them, but they do not need any portion of my poor estate. . . . I desire Hettie to make a handsome present to my friend and relative

Webster, &c v. Wathen, &c.

Jo Allen, who has been so very kind to me. I suggest a handsome picture, for instance."

The testatrix died in 1884, her estate consisting of money and other personal property of the value of some eight or nine thousand dollars. At the time of her death the most cordial relations existed between the three sisters, but the testatrix had taken charge of the younger one, Hettie, when the latter was quite a child, and in the language of the witnesses "became a mother to her." There existed between these two the strongest affection and most intense devotion, though the child was only the half sister of the other two.

At the time the will was made Euphemia was the wife of her co-appellant, and had, in her own right, an estate of some sixteen thousand dollars. The estate of Hettie is not clearly shown, but it appears to have been something less than that. She herself testifies that at that time she was worth nine thousand dollars.

It does not appear that the sister Hettie has ever made any "presents" to the appellant, or looked after her "interests" in any respect, or protected her to the extent of her "power," whatever was meant by these expressions of the will. And in March, 1893, Euphemia and her husband instituted this action, setting up the will and relying on its provisions as creating a trust in her behalf, and alleging that for the last eight years theretofore, the female appellant had been a confirmed invalid, requiring the constant attention of physicians and nurses, and was very poor and in need of the necessaries of life. By her proof she shows that her estate has been reduced to some nine thousand dollars, and her allowance is sixty dollars per month therefrom.

The court below appears to have spared no pains in the

examination of the principles involved, and thus expresses his conclusions:

"When the devisor's intention is ascertained it must be effectuated by executing the will. If the language used, however, is so vague and inexpressive that it is impossible to ascertain with certainty the object or the subject of the precatory language, no trust will arise by implication or construction, because the intention is undefined and unascertainable. The subjects of the testatrix's wish are not defined and are, from the language she employs, impossible of ascertainment. Her wish of benefaction to her sister, Mrs. Webster, is too vaguely worded as to the subject matter of the intended bounty to be carried into execution.

How is it possible to ascertain what the testatrix intended by the words 'any presents that she may need that my estate can afford?' Who can guess what was intended by the word 'presents,' and what standard or test is to be adopted in determining the capacity of the estate to afford such presents?"

The petition was, therefore, dismissed.

The argument of the learned judge seems to us to need no further elaboration, and is clearly supported by ample authority.

Learned counsel cite Hill on Trustees (p. 74), where the author says: "However, any description, no matter how untechnical or inartificial, will be sufficient, as long as it points out clearly what is the property to which the trust is intended to apply. Therefore, the subject has been considered to be defined with sufficient accuracy by the description of 'what fortune he (the first taker) should receive under the testator's will;' or what she 'has in her own power to dispose of that was mine,' or 'the share of my property bestowed on her'" etc.

Manifestly, the description of the subject of the alleged bequests in the case at hand falls far short of pointing out clearly, or even at all, "what is the property to which the trust is intended to apply." The word "presents" in itself does not convey the impression that any permanent interest in the body of the estate was intended to be conferred, decidedly the contrary. And when to this we add the uncertain and undefined limitations prescribed in the will, the possible "need" of the sister, and the capacity of the estate to "afford" the gift, we reach a state of absolute uncertainty as to the subject to which we may apply the supposed trust. That the testratrix wanted her legatee to make some presents to her sister we do not doubt, and it may be supposed that she expected her to be more generous in doing so than in giving a present to her friend and relative, Jo Allen, but we think her wishes as to the two were of the same general nature, and the general use of the word the same in each clause of the will.

It is conceded by counsel that all the authorities agree that before a court will declare a trust to exist and enforce it, three things must be shown: 1. The words of the testator must be construed as mandatory. 2. The person intended to be the beneficiary must be certain. 3. The subject to which the obligation relates must be certain.

If we admit the existence of the first two requisites in this case, we are yet utterly unable to say that the subject to which the obligation relates is at all certain, or can be ascertained with reasonable certainty.

The "need" of the appellant, as shown by her proof, requires from one hundred and fifty dollars to two hundred dollars per month, and the estate of the appellee could afford the bestowal of such monthly "presents" only a few years at most.

"In law the maxim is familiar," say counsel, "that that is sufficiently certain that is capable of being made certain," and so we agree, but in no reported case or in any text writer can we find the principles invoked by counsel stated in such liberal terms as to be made applicable to the case at hand.

In Bohon v. Barret, 79 Ky., 378, the court said: "It appears with certainty that Lillie Barret is the object of the trust; that its subject is the ten thousand dollars, which the executor is requested to 'expend,' 'settle upon,' and 'use for her benefit.'" And so in Sale v. Thornberry, 86 Ky., 266, where the testator gave the estate to his wife in fee, adding this language: "I only make this request of her and only as a request, for I feel that her own kind heart and good judgment will prompt her to do so without, viz.: That in the event she should marry again she will see that the interests of our children in said property are protected."

The court said that in the execution of the trust, even if disposed to adjudge the language created one, the chancellor must necessarily speculate as to the extent and character of the holding by the mother and children, and the mother was held to take an absolute fee, and free from any trust. Other cases might be cited to the same effect.

We have examined with interest the numerous authorities cited by the learned counsel for the appellants, but have been unable to conclude that the testatrix created by the words, "any presents to my sister, Euphemia, as she may need, and as my estate can afford," a charge upon her estate of so definite a nature as to be enforceable by the chancellor.

Judgment affirmed.