CASE 44—ACTION BY ROBERT M. JEWELL AGAINST THE LOUISVILLE
TRUST CO., ADMINISTRATOR OF C. P. BARNES, ETC., TO ENFORCE AN
ALLEGED TRUST—MARCH 19.

# Jewell v. Barnes' Admr.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    AFFIRMED.

WILLS—PRECATORY TRUST.

Held:   Where testator and his brother had for many years been
engaged as partners in the jewelry business, and testator con-
templated that the business would be continued by his widow
and his brother as partners, the expression by testator in his
will of the desire that his friend J. "be retained in the employ
of the firm on such liberal terms as his long and faithful ser-
vice entitle him to," did not create a precatory trust; and the
widow, having bought the brother's interest in the business, is
under no obligation to keep J. in her service.

E. E. McKAY, ATTORNEY FOR APPELLANT.

This controversy arises from a clause in the will of C. P.
Barnes, deceased, being the seventh clause of said will and is
as follows:

"I desire that my friend, Robert M. Jewell, be retained in the
employ of the firm on such liberal terms as his long and faith-
ful service entitle him to."

The petition shows that for many years the appellant had been
a faithful employe of the testator in the building up and con-
ducting of a large and lucrative jewelry business in the city of
Louisville.    The appellant brought this suit to compel the execu-
tion of this clause of the testator's will.

The petition shows that a very short time after the death of
testator against plaintiff's protest, the firm reduced the salary
allowed plaintiff some time before his death by the testator.
Later, the firm reduced his wages still farther, and finally, fired
him out of the employment of the firm altogether.    This suit
is brought to recover the difference between what the appellant
alleges to be a reasonable compensation to-wit, $20 per week,
which had been allowed him by the testator for some time be-
fore his death, and what he was able to get elsewhere in other
employments.

Jewell v. Barnes' Admr.

· It is contended by appellee that the clause of the will afore-said is uncertain and unenforcible. The said clause is evi-dently in the character of a precatory trust and according to re-cent authorities is enforcible.

## AUTHORITIES CITED.

. Colton v. Colton, 127 U. S. Rep., p. 300; Phillips v. Phillips, 112 N. Y. Rep., 197; Blanchard v. Chapman, 22 Ill. App., 341; see also Dierbert's Appeal, 78 Pa. St. Rep., 296; Laurence v. Cook, 32 Hun., N. Y. Rep., 126; Bohan v. Barrett, 7 Ky. Law Rep., 398; Halsey, Trustee v. Morgan, &c., 17 Ky., 529.

HARRIS & MARSHALL, ATTORNEYS FOR APPELLEES.

The appellant claims that under the will of C. P. Barnes, the business formerly conducted by Barnes & Bro., had to continue in business and continue his employment whether they wished it or not and whether the business was profitable or not, and whether his services were worth the amount or not. We say the will is not susceptible of any such construction, and there is no law entitling the plaintiff to any such claim. The clause referring to plaintiff was nothing more than a mere recommen-dation to his surviving partner and widow, and is not a precatory trust.

## AUTHORITIES.

1. In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves taken in connection with all the will, that the testator intended to cre-ate an express trust. The intention of the testator is the main thing. 27 Am. & Eng. Ency. of Law, 1 ed., p. 40.

2. The testator's desire that executors whilst acting in the manage-ment of the estate, and that the devisee when he shall enter into the receipt of my rents shall continue employe in his po-sition at the usual fees allowed agents, held that these words did not create a trust in favor of the employe. Shaw v. Law-less, Clark & Finnelly's Reports, vol. 5, p. 129; Foster v. Elsley, The Law Reports, 19 Chancery, 518.

3. A direction in a will that a certain person shall be employed as agent whenever his trustees should have occasion for the ser-vices for a person in that capacity, held not to create a trust which such person could enforce. Finden v. Stephens, 22 Eng. Chancery Reports, being 2 Phillips, p. 142.

4. Where the testator merely recommend or express a desire that his trustee should continue another in their employ to render services, does not create a trust. Lewin on Trusts, vol. 2, text book series, Blackstone Pub. Co., by Wm. Scott, top p. 805, side p. 641; Perry on Trusts, 5 ed., vol. 1, sec. 123.

Jewell v. Barnes' Admr.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

Appellant, Robert M. Jewell, filed this suit against the appellees, the Louisville Trust Company, as the administrator with the will annexed, and S. S. Barnes, the residuary devisee, of C. P. Barnes, deceased. The court below sustained a demurrer to his petition, and, he failing to plead further, dismissed the action. The only question on the appeal is, therefore, did the petition state a cause of action?

It was alleged in the petition that C. P. Barnes was at the time of his death, and had been for many years theretofore, engaged in business as a jeweler, with his brother, J. B. Barnes, under the firm name of C. P. Barnes & Co.; that the business was a large one, and C. P. Barnes became a wealthy man; that in the year 1877, when appellant was a small boy, the deceased took him into his employ and treated him as if he had been his own son, often promising him an interest in the business; that appellant started with a small salary, which was increased from time to time until the death of the deceased, when he was receiving $20 a week; that the deceased died, leaving a will which was duly admitted to probate, and by the seventh clause of the will the testator provided for him in the following language: "I desire that my friend Robert M. Jewell be retained in the employ of the firm on such liberal terms as his long and faithful service entitles him to." It is also alleged that on February 23, 1895, within a month after the death of the testator, against his protest, his salary was cut down from $20 to $15 a week, and three years later, on February 26, 1898, to $13.50 a week; that about two months after this, without fault on his part, he was discharged, against his protest, and had been unable to earn anything like $20 a week from the time of his discharge to the filing of the suit; that appellees were running the store

'with great profit, and it was incumbent on them, under the 'will, to keep him in their employment at $20 a week; that 'his wages for the time amounted to $4,780, and he had only received $3,045.70; leaving a balance due him of $1,734.30; that C. P. Barnes was the owner of a larger interest in the firm than his brother, J. B. Barnes, and by his will gave to his brother enough of his holdings in the firm to make the brother and the testator's widow, appellee, S. S. Barnes, equal partners in the business; that they continued the business under the same firm name from the death of the testator, on February 5, 1895, until May 19, 1897, when the brother, J. B. Barnes, sold out his interest in the firm to the widow, appellee, S. S. Barnes; and that she has continued the business under the name of C. P. Barnes & Co. It will be observed that the brother, J. B. Barnes, is not sued. The suit is brought against the personal representative and the widow, as residuary devisee. It will be also observed that, although appellant's salary was cut down to $15 soon after the testator's death, he continued with the firm and continued to accept the salary that was paid him; and things remained in this shape until after J. B. Barnes sold out, and appellee S. S. Barnes took charge of the business in her own right, after the dissolution of that firm, and appellant continued to work for her and to accept the reduced salary from her until he was discharged by her something like a year afterwards.

It is insisted for appellant with great earnestness that the will creates a precatory trust in his favor, and that he is entitled under the will to his wages at $20 a week. The will does not fix the salary that appellant is to receive if retained in the employ of the firm, nor does it require that he shall be retained. The language imports no more than an expression of the testator's desire, and the

clause was, no doubt, put in this shape so as not to embarrass the devisees in the management of their affairs. The will contemplated that the brother and wife of the testator, as a firm, would continue the business; and to this firm the testator expressed the desire that it would retain appellant in its employ on such liberal terms as his long and faithful service entitled him to. The amount of compensation is expressly left to the firm, and no desire is expressed as to anything that should be done after that firm went out of business. The suit here is not against that firm, and, if this action can be maintained, the clause in question will amount, in substance, to a charge of an annuity upon the widow, appellee, S. S. Barnes, in favor of appellant, unless she quits the business. The testator clearly intended no such result. In Shaw v. Lawless, 5 Clark & F., 129, the testator expressed his "particular desire" that the devisee, when he received the property, should continue L. "in the receipt and management thereof, and likewise employ and retain him in the receipt, agency, and management of the rents," at the usual fees allowed to agents, for this reason, as expressed in the will: "He having acted for me, since I became possessed of said estate, fully to my satisfaction." It was held that no precatory trust resulted. Among other things, the Lord Chancellor said; "All cases upon a subject like this must proceed on a consideration of what was the intention of the testator. Now, the first observation that strikes one with reference to that matter is that during the life of the testator Lawless was his agent. But then he was agent only during the testator's pleasure, and by the terms of the will the testator desired that he should continue in the agency. Is that desire to be considered a command? If so, for what length of time is he to con-

tinue . . . If Lawless is the equitable incumbrancer to the amount of one-twentieth part of the income of the estate, he has a clear interest in the residue, for he might take one-twentieth part of the residue; he might file a bill in chancery in order to control the application of the residue and claim to be absolutely invested in what he is entitled to receive, namely, this one-twentieth part." So, here, if the clause in question created a precatory trust, appellant would have been entitled to maintain a bill in equity to protect his rights and prevent the firm from taking any steps that might imperil his annuity. Such a right might render the estate of the devisee materially less valuable, and make appellant to no small extent, the real beneficiary under the will. The case above referred to was followed in Foster v. Elsley, 19 Ch. Div. 518, and Finden v. Stephens, 22 Eng. Ch. 142. See, also, Perry, Trusts, section 123. The firm composed of the widow and the brother were not required to continue the business. They might close it out at pleasure. If they had sold to a stranger, clearly no trust would have attached in favor of appellant to the assets in their hands received from the sale. When the brother sold to the widow, he was acquit of all responsibility. It was not the testator's purpose to create a permanent charge on the corpus of the estate in the hands of the devisees; and the widow after her purchase was under no obligation to keep appellant indefinitely in her service, regardless of the amount of business she did, or other circumstances affecting her interest. Judgment affirmed.