## Walker et al. v. Walker's Administrator.

(Decided June 9, 1931.)

GEO. S. WILSON, Jr., for appellants.

CLEMENTS & CLEMENTS and E. B. ANDERSON for appellee.

502

This appeal presents for interpretation the will of
M. H. Walker. It is in this language:

"Jan. 21, 1921.

"My Will.

"I convey to my dear wife Margaret Layson
Walker, all of my estate both real and personal my
life Ins. $7000 to do as she sees fit to do, to convey
the real estate if she wants to, at her death what is
left to be divided equal between my three children
Murry H. Walker, Margaret R. Walker, James R.
Walker.

"In case she should remarry then the estate is
to be put in trust for the surviving children or their
heirs. I want my oldest son, M. H. Walker, Jr., to
study medicine as he wants to and charge his part of
the estate with the money to do so. I know that my
wife will see that everything is carried out all O. K.
As a favor I ask my friend Dr. Ed Barr to advise
her about any business deals she sees fit to make if
he survives me. If not Mr. James Russell, Cashier
of First National Bank.

"[Signed] M. H. Walker, M. D."

Dr. M. H. Walker departed this life February 15,
1930, a resident of Daviess county, Ky., after having
made and published the foregoing as his last will. At his
death he left surviving, his widow, Margaret Layson
Walker, and his children, Murry H. Walker, Margaret
R. Walker, and James Walker, who were infants and
resided with their father and mother at the time of his
death. The Owensboro Banking Company qualified as
administrator with the will annexed of the estate of M.
H. Walker. As such administrator with the will
annexed, it received the estate of testator, consisting of
money, notes, accounts, proceeds of life insurance, and
other personal property of the value of approximately
$7,000, and took possesson of his real estate of the value
of $12,000. It paid the indebtedness of the testator, and
has in its hands for distribution the remainder of his
estate.

It filed this action to have the will interpreted and to
have the chancellor to advise it of the rights of the widow

and children, respecitvely, in the property of the testator. Issue was formed by appropriate pleadings, judgment was rendered construing the will of testator as giving to Margaret Layson Walker, as his widow, title in fee to all of his property. The guardian ad litem of the infants excepted to the judgment, and this appeal was taken and is prosecuted by him for the infants.

The appellees in support of their contention insist that Margaret Layson Walker is by the will of testator devised in fee the property of the testator. They cite and rely on Gilligan v. L. & N. R. R. Co., 195 Ky. 1, 240 S. W. 739; Craig v. Radelman, 199 Ky. 501, 252 S. W. 631; Alexander v. Hendricks, 201 Ky. 677, 258 S. W. 81; Wells v. Jewell, 232 Ky. 92, 22 S. W. (2d) 414. The rule deducible from these cases (and others that might be cited sustaining their holding) is that, "after a clause in a testamentary paper making a devise in fee, without limitation, to a named person, there can be no limitation put on such devise by any subsequent section or paragraph of the paper, and further that where a fee is devised there can be no remainder and any attempt on the part of the testator to limit or curtail the fee by a subsequent paragraph or provision in the testamentary paper will be ineffectual."

It is equally as well established that the above rule "has no application where the devisee takes a defeasible fee, since the very essence of a defeasible fee is that it terminates on the happening of a particular event and therefore limitation after happening of the event is in no sense a limitation over after the devise of the fee." Wills v. Wills, 85 Ky. 486, 3 S. W. 900, 9 Ky. Law Rep. 76; Bacon v. Dickinson, 199 Ky. 121, 250 S. W. 807; Laughlin v. Neeley's Ex'x, 223 Ky. 656, 4 S. W. (2d) 690; American Mission Society v. Tate, 198 Ky. 621, 250 S. W. 483; Parepont v. Parepont's Adm'r, 228 Ky. 639, 15 S. W. (2d) 513; Lehfart v. Scharre et al., 143 Ky. 849, 137 S. W. 775, Ky. Stats., sec. 2342.

The expressed intention of the testator is the talisman by which a will must be interpreted and the quality and nature of the estate devised must be measured and determined. His intention must be ascertained and divined from the language employed by the testator in the writing as a whole, without resorting to technical rules of construction which may be resorted to when its expressions are ambiguous or obscure. Jones v. Jones' Ex'rs, 198 Ky. 756, 250 S. W. 92; State Bank v. Rose's

Adm'r, 219 Ky. 562, 293 S. W. 1087; Walker v. Irvine's Ex'r, 225 Ky. 699, 9 S. W. (2d) 1020; Ewering v. Ewering's Ex'x, 199 Ky. 450, 251 S. W. 645, 646.

It is an ancient rule that, when an absolute fee is first given with an unlimited power of disposition, it cannot be limited or cut down by a following or subsequent clause. "But more recently, especially with the language of section 2342, Ky. Stats., supra, in mind, this court has held that, since a will is not complete until all of it is written and executed by the testator, and since the first clause giving an absolute estate is not effectual until the will is signed, and if the testator, before placing his signature to it, inserts a clause subsequent to the one which devises an absolute fee with an unlimited power of dispositon qualfying such clause, thereby indicating his intention and purpose not to devise an absolute fee by the first sentence or clause, his intention so manifested will be given effect by the courts when interpreting the will. If a subsequent clause is so worded as not to destroy the power of the devisee to exercise unlimited power of disposition, it will be construed as not qualifying or limiting the absolute estate first given, and therefore ineffectual for that purpose.

"If, however, the subsequent clause was such as to destroy the power of disposition in the first and apparently absolute taker, and itself made disposition of the entire property after his death, then he would take only a life estate, the same as if it was expressly so stated in the will, upon the ground that such a construction clearly conformed to the plainly manifested intention of the testator. When, therefore, a will devises or bequeathes property to one absolutely, and in a subsequent clause all of the same property is disposed of to others after the death of the first taker, the latter will be deemed as having only a life estate in it; but, if the limiting clause purports only to dispose of that portion of the property which the first taker does not consume or dspose of, and therefore operates only on some remaining portion of it, it will be given no effect, and the first taker will be deemed as taking an absolute estate, since in that event his absolute estate, with the accompanying right to dispose of the property is not curtailed or diminished in any respect." Ewering v. Ewering's Ex'x, supra.

By the first sentence in the will in the present case, the testator devised his estate in fee simple. If no other language of the will is looked to or considered, and it is interpreted by itself, it is apparent that he devised to his wife an absolute estate. But so to interpret it effectually nullifies the entire will except its first sentence. So to exclude the second sentence of the will, namely, "In case she should remarry then the estate is to be put in trust for the surviving children, or their heirs," plainly defeates the expressed intention of the testator. The pre-eminent desire and purpose of the testator was to provide for his wife, after his decease, and to afford her the plenary benefit and enjoyment of his estate so long as she remained his widow. "Should she remarry," he anticipated and expected that her environments and circumstances would be thereby so altered, perhaps without her own choosing, as to cause her to exercise a different influence and control of even her own property, as is often the case of a second marriage. By this language of his will he provided against such a contingency, on the happening of which he desired a different disposition of his property for the benefit of his children or their heirs. He did not attempt thereby to limit the fee devised by the first sentence to his wife, but intended to and did provide against a contingency by which the fee devised to her was defeated on its occurrence, namely, her remarriage.

> "A defeasible fee is where the devisee becomes invested with the fee-simple title, subject to be divested upon the happening of some contingency provided by the will." Wills v. Wills, 85 Ky. 492, 3 S. W. 900, 902, 9 Ky. Law Rep. 76.

A similar will in respect to the one now under consideration was interpreted in the case of Lehfart v. Scharre, supra, and it was interpreted to give a defeasible fee to the devisee. The language of the whole will plainly devises to Mary H. Walker a qualified or defeasible fee. The language employed in the entire will does not authorize its interpretation to be a devise unconditionally of a fee-simple title to her. The language in the wills interpreted in the case of Wells v. Jewell, 232 Ky. 93, 22 S. W. (2d) 414, and others following and preceding it, containing like phraseology and provisions wherein the same rule was applied and adhered to, does not control the present one. It is within the rule enunci-

ated in the cases of Anderson v. Hall's Adm'r, 80 Ky. 91; McClelland's Ex'r v. McClelland, 132 Ky. 284, 116 S. W. 730; Wills v. Wills, supra; Bacon v. Dickinson, supra; Laughlin v. Neeley's Ex'x, supra; Parepoint v. Parepoint's Adm'r, supra; and Littell v. Littell, 232 Ky. 251, 22 S. W. (2d) 612.

It is therefore our conclusion that the testator devised to Mary H. Walker a fee-simple title to his estate, subject to be defeated by her remarriage, and, in that event, it is to be put in trust for the benefit of his surviving children or their heirs.

Wherefore the judgment is reversed, with directions for further proceedings consistent with this opinion.