## Williams et al. v. Williams Committee et al.

(Decided Nov. 24, 1933.)

STEPHEN D. PARRISH and JOHN NOLAND for appellants.

BENTON & DAVIS for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Taylor Williams and five others, claiming to be devisees under the will of W. A. Williams, were held to have no interest in his estate, that no trust was created for their benefit, and have appealed.

Omitting the caption and certificate of probate, this is the will:

"I, W. A. Williams, being of sound mind and disposing memory, and desire to indicate while I am able to do so the disposition I wish made of my property after my death, do hereby make, publish and declare this to be my last will and testament, hereby revoking any and all other writings being or purporting to be my last will:

"1st. As soon after my death as is practical

I desire all of my just debts, including my funeral expenses, paid.

"2nd. I will, bequeath, and devise to my beloved wife, Mary A. Williams, all of my property real and personal to be hers absolutely. It is my desire and I request that if I pre-decease her, then before her death she make a will giving to her people one-half [½] of my property, and to my people the other one-half [½].

"3rd. I nominate and name my said beloved wife, Mary A. Williams, as my executrix of this my last will and testament, and hereby invest her with title to all of my real property, and authorize and empower her to convey same as my executrix, and ratify and approve all her acts in so doing, as if they were my individual acts.

"Witness my signature, this 23rd., day of November, 1912.

"W. A. Williams."

When this will is stripped to the bone, here is what is left of it:

"I desire all my debts paid, I will to my wife all my property to be hers absolutely. It is my desire and I request she will to her people one half of my property and to my people the other one half. I nominate my wife as my executrix and invest her with title to all my property and empower her to convey same as my executrix."

W. A. Williams left no issue him surviving, and the expression "my people" as used in this will means those other than his wife who would take his property if he had died intestate, to wit, Taylor Williams et al., and the expression "her people" means those other than her husband who would take the property of Mary A. Williams if she should die intestate, to wit, the appellees, Shelby Taylor et al. See Shaver v. Weddington, 247 Ky. 248, 56 S. W. (2d) 980. We shall hereinafter refer to both the Williams family and the Taylor family as Taylor Williams et al.

The estate of W. A. Williams consisted of 568 acres of land in Madison county, Ky., and about $8,000 in personal property. Mary A. Williams qualified as executrix of her husband's will, and entered upon the dis-

charge of her duties as such. Subsequently she was adjudged to be of unsound mind, and Wm. Jett, Jr., was appointed her committee.

On April 18, 1933, Mary A. Williams by her committee filed this action against Taylor Williams et al. (the testator's people) and Shelby Taylor et al. (his wife's people), seeking a construction of the will, asserting that this will vested Mary A. Williams with an absolute fee-simple title, and that the defendants had no interest therein. There is an allegation that it will be necessary for some of this real estate to be sold for her maintenance, but no such relief is asked in the prayer, and probably this allegation was only put in by way of inducement, and this is not a suit under subsection 4 of section 489 of the Civil Code of Practice, as such a suit would have to be by the committee against Mrs. Williams, but is simply a suit for the construction of this will.

A demurrer to this petition was overruled, the defendants declined to plead further, the trial court adjudged that Mrs. Williams took a fee-simple title under this will and the defendants took nothing, and the correctness of that holding is the question before us.

Taylor Williams et al. claim that this will creates for them a precatory trust. We will be less apt to go astray if we will keep in mind that the express "precatory trust" is a misnomer; it should be called a trust created by precatory words. It is simply a trust after all, and to create a trust there are very few requirements, and there is no particular formality to be observed.

When a person having the power of disposal over property shall make an absolute gift to one person in his will, and accompany the gift with words expressing a "belief," "request," etc., that it be kept or used for or given or willed to another, the courts will consider the intention of the testator as thus manifestly implied, and will carry the intention into effect by declaring the immediate donee or first taker to be a trustee, for those whom the testator intended to benefit, and thus create a trust in favor of the parties to be benefited. See Perry on Trusts (7th Ed.) sec. 112.

In the case before us, that the testator had the power of disposal as to the property he was disposing

of is certain; he made his wife his immediate donee, that is certain; and equally certain are those to whom he desired the property to pass from her; and our only question is, What did he mean by the words "desire" and "request"? Were they mere words of advice, a suggestion to her of what he thought would be an appropriate thing for her to do, or were they words of command, something he was requiring her to do? What were the nature of the duties he was imposing upon her?

In a lecture delivered by Austin W. Scott, of the Harvard Law School, before the Cleveland Bar Association, he said:

"It is that last I want to comment on, enforceable duties. It arises most frequently in the case of a will. Suppose the testator says he wishes or desires that a certain disposition be made of the property, is that binding or is it not? Of course it is unfortunate that he uses that language. He leaves all his property to his wife, and says, 'I desire her to do so and so with it,' or, 'I desire her to divide it among the children when she dies.' If he wants to direct her to do it, why does he not do so? There seems to be an inherent desire for politeness in the human bosom, particularly when one is addressing his wife, even though she may not see it until he is dead. 'I direct you to do so and so!' Wives do not like that kind of thing and he knows it, and he hesitates to write something that is unpleasant in his will.

"The good old schoolma'am does not say, 'I demand that you leave the room,' or 'I direct you to leave the room,' but, 'I desire you to leave,' or, 'I wish you to leave the room.' Those words, although they are merely precatory, may be held to be mandatory in effect. But there is an enormous amount of litigation because the court has to guess what the testator meant."

In the tentative draft of the Restatement of the Law of Trusts prepared by Mr. Scott in section 37 we find this:

"In determining the intention of the settlor the following circumstances among others are considered:

"[1] The imperative or precatory character of the words used;

"[2] The definiteness or indefiniteness of the property;

"[3] The definiteness or indefiniteness of the beneficiary or of the extent of his interest;

"[4] The relations between the parties;

"[5] The financial situation of the parties;

"[6] The motives which may reasonably be supposed to have influenced the settlor in making the disposition;

"[7] Whether the result reached by construing the transaction as a trust would be such as a person in the situation of the settlor would naturally desire to produce."

When we apply these guiding principles to the will and circumstances before us, all of them except the first at once suggest that the testator intended to create a trust.

The first one, however, presents some difficulty. One principle applicable to this situation, and often stated in both opinions and texts, is this:

"No trust is created unless the settlor [in this case the testator] manifests an intention to create enforceable duties."

In the case before us that means that the moment this will was probated certain enforceable rights then vested in Taylor Williams et al., which related back to the moment W. A. Williams died, else they would never have any rights in this property. Whatever rights Taylor Williams et al. may ever hope to have in this property vested then or never, and the answer to that question must be found, not in what we may suppose the testator meant to say, but in what is meant by what he did say.

But for the use of the words "to be hers, absolutely," we would have no difficulty, but the testator used them, and we must inquire what he meant by them as used in connection with the other words in his will

Without those words, it would be clear the testator intended a trust for his people and his wife's people, and, if he had written nothing more, but had stopped at the word "absolutely," it would be equally clear he intended to give this property to his wife in fee simple,

but a man is not through making his will until he stops writing and signs it in the manner required by the statute, and the entire paper then becomes his will, one part just as much so as another, so we must take this will as a whole and determine what the testator meant by it. See Shaver v. Weddington, 247 Ky. 248, 56 S. W. (2d) 980; Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645; Parepoint v. Parepoint, 228 Ky. 639, 15 S. W. (2d) 513; Walker v. Walker, 239 Ky. 501, 39 S. W. (2d) 970.

Some of the leading cases in other jurisdictions are:

Pennock's Estate, 20 Pa. 268, 59 Am. Dec. 718. The testator willed to his wife all his real estate for life, and all of his personal property absolutely, "having full confidence that she will leave the surplus to be divided at her decease justly among my children." It was held, and we think rightly so, that no trust was intended.

Similar questions were similarly disposed of in Ide v. Ide, 5 Mass. 500, in Bowen v. Dean, 110 Mass. 438, in Melson v. Cooper, 4 Leigh (Va.) 408, in Gifford v. Choate, 100 Mass. 343, in Hale v. Marsh, 100 Mass. 468, in Ramsdell v. Ramsdell, 21 Me. 288, and in Howard v. Carusi, 109 U. S. 725, 3 S. Ct. 575, 581, 27 L. Ed. 1089, where the question is well discussed, and in this case the Supreme Court quoted this from Story's Equity Jurisprudence, sec. 1070:

"Whenever the objects of the supposed recommendatory trust are not certain or definite, whenever the property to which it is to attach is not certain or definite, whenever a clear discretion or choice to act or not to act is given, whenever the prior dispositions of the property import absolute and uncontrollable ownership, in all such cases courts of equity will not create a trust from words of this character."

Against this we have the rule written by Lord Langdale in Knight v. Knight, 3 Beavan, 173 (Eng.):

"As a general rule, it has been laid down, that where property has been given absolutely to any person, and the same person is, by the giver, who has power to command, been recommended, or entreated, or wished, to dispose of that property in favor of another, the recommendation, entreaty, or wish, should be held to create a trust: 1. If the

words are so used, that upon the whole, they ought to be construed as imperative; 2, if the subject of the recommendation, or wish be certain; and 3, if the objects, or persons intended to have the benefit of the recommendation, or wish, be also certain.''

It might be suggested we should follow the rule approved by the United States Supreme Court rather than the rule laid down in England, but the law is found in what courts do rather than in what they say, and in a later case arising under the will of General Colton, styled Colton v. Colton, 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138, the general had made this provision:

"I give and bequeath to my said wife, Ellen M. Colton, all of the estate, real and personal, of which I shall die seized or possessed or entitled to. I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best.''

The Supreme Court held the general had charged the property willed to his wife with a trust in favor of his mother and his sister.

Cases can be found holding there can be no trust intended where the precatory words follow an absolute devise, and other cases holding that there can, but the rule seems to be that, although the property has been given absolutely, a trust may be intended by the use of precatory words, but it is not to be lightly imposed, as the gift in absolute terms is a strong indication that the subsequent precatory words are not obligatory. Expressed in different form, the gift of an absolute estate raises a presumption the subsequent precatory words create moral, but not obligatory, duties; this, however, is only a presumption that may be overcome by the nature of the precatory words and the intention of the testator as gathered from the whole will, viewed in the light of the seven guides copied above.

Here are some opinions in which it was held a trust had been intended by the use of precatory words following the gift of an absolute estate: Bohon v. Barrett, 79 Ky. 378, Shaver v. Weddington, 247 Ky. 248, 56 S. W. (2d) 980, Seefried v. Clarke, 113 Va. 365, 74 S. E. 204, Murphy v. Carlin, 113 Mo. 112, 20 S. W. 786, 35 Am. St. Rep. 699, Noe v. Kern, 93 Mo. 367, 6 S. W. 239, 3

Am. St. Rep. 544, Knox v. Knox, 59 Wis. 172, 18 N. W. 155, 48 Am. Rep. 487, Swarthout v. Swarthout, 111 Wis. 102, 86 N. W. 558, Lucas v. Lockhart, 10 Smedes & M. (Miss.) 466, 48 Am. Dec. 766, McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412.

Returning to the will before us, and viewing it in the light of these authorities, several questions present themselves: If Mr. Williams intended to will this property to his wife absolutely, why didn't he stop there? Why does he (in the third item) invest her with title? Why does he speak of it there as "my property"? Why does he empower her to convey it "as my executrix"? Why does he say anything about "my people" or "her people"? All of this was useless and purposeless, unless the testator intended his wife should take and hold this property as her own while she lived, but upon her death it was to be divided one-half to go to his people and one-half to her people. Hence the judgment must be reversed.

We have given here a list of Kentucky cases we have examined wherein it was held that trusts were created by the precatory words used: Major v. Herndon (1879) 78 Ky. 123; Bohon v. Barrett (1881) 79 Ky. 378; Curd v. Field (1898) 103 Ky. 293, 45 S. W. 92, 19 Ky. Law Rep. 2016; Whittingham v. Schofield (1902) 67 S. W. 846, 68 S. W. 116, 23 Ky. Law Rep. 2444; Hughes v. Bent (1904) 118 Ky. 609, 81 S. W. 931, 26 Ky. Law Rep. 453; Shaver v. Weddington (1933) 247 Ky. 248, 56 S. W. (2d) 980.

We have thought it well to also list those cases we examined wherein it was held no trust was intended; Hazelwood v. Webster (1885) 13 Ky. Opin. 482; Sale v. Thornberry (1887) 86 Ky. 266, 5 S. W. 468, 9 Ky. Law Rep. 472; Enders v. Tasco (1889) 89 Ky. 17, 11 S. W. 818, 11 Ky. Law Rep. 592; Webster v. Wathen (1895) 97 Ky. 318, 30 S. W. 663, 17 Ky. Law Rep. 32; Jewell v. Barnes (1901) 110 Ky. 329, 61 S. W. 360, 22 Ky. Law Rep. 1757, 53 L. R. A. 377; Igo v. Irvine (1902) 139 Ky. 634, 70 S. W. 836, 24 Ky. Law Rep. 1165; Cox v. Anderson's Adm'r (1902) 69 S. W. 953, 24 Ky. Law Rep. 721; White v. Irvine (1903) 74 S. W. 247, 24 Ky. Law Rep. 2458; Thruston's Adm'r v. Prather (1903) 77 S. W. 354, 25 Ky. Law Rep. 1137; Goslee v. Goslee (1906) 94 S. W. 638, 29 Ky. Law Rep. 654; Wood v. Wood (1907) 127 Ky. 514, 106 S. W. 226, 32 Ky. Law

38

Rep. 408; Schneiderhahn's Gdn. v. Zeller (1908) 110 S. W. 834, 33 Ky. Law Rep. 694; Gross v. Smart (1920) 189 Ky. 338, 224 S. W. 871.

The court will set aside its judgment and enter a judgment in conformity to this opinion.

Judgment reversed.

The while court sitting.