George S. Clay and Others, Appellants, *v.* Lucretia M. Wood and Others, Respondents.

*Will — an absolute gift followed by a request — when it does not limit the fee first given.*

In an action brought, among other things, to construe the will of William W. Clay, it appeared that after payment of his debts he gave to his wife his house and furniture and also a legacy, which he directed should be paid before any other legacies given thereby; that after making certain other bequests, he gave her all his residuary estate, which latter gift was followed by a clause in these words: "And it is my desire and request that my said wife do sustain, provide* for and educate Lucretia M. Wood, the daughter of my said adopted daughter, Josephine M. Wood. And it is my further desire and request that my wife do make the said Lucretia M. Wood, Josephine M. Wood and my nephews and nieces, the children of my brothers, Caleb S. Clay and George Clay, joint heirs after her death in the said estate, which by this will I have bequeathed to my said wife."

After the death of the testator his widow made a will, by which she undertook to give all the property to persons other than the children of Caleb S. Clay and

George Clay, and subsequently this action was brought to construe the will of William W. Clay and for an accounting.

*Held,* that under the terms of the will the widow took an absolute fee in the residuary estate;

That the clause relative to the disposition of the residuary estate, which the testator desired his widow to make, contained merely a request;

That it did not limit the absolute gift to her of such estate, nor did it give the nephews and nieces of the testator a vested interest in the residuary estate.

Parker, J., dissenting.

Appeal by the plaintiffs, George S. Clay and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 21st day of March, 1895, upon the decision of the court, rendered after a trial at the New York Special Term dismissing the plaintiffs' complaint.

William W. Clay died on the 21st of October, 1875, leaving a last will dated May 24, 1859. By the said will the testator devised and bequeathed his property as follows: *First,* he directed his debts and funeral and testamentary expenses to be paid, among which debts was included the mortgage then a lien upon his house and lot No. 23 West Thirty-first street, New York city, provided it should not be paid before his death. *Second,* he gave to his wife the said house and lot and the household furniture, etc., contained in the house, and also the sum of $20,000, which sum was to be paid before any legacies thereinafter bequeathed. *Third,* he bequeathed to his two brothers, Caleb S. Clay and George Clay, and to his sister, Lucinda S. Clay, each the sum of $5,000. *Fourth,* he gave to his nephew William W. Clay, Jr., the son of his brother George Clay, $1,000 and one share of stock in a library association; to his nephew Edmund P. Clay, the son of his brother Caleb S. Clay, $500; and to his adopted daughter, Mrs. Josephine M. Wood, $3,000. He then provided that, in case his estate was insufficient to pay these legacies in full after the payment of his debts, funeral expenses and legacies to his wife, these legacies should be reduced proportionably, and that in no case should they be a lien or charge upon the house and lot or household goods devised and bequeathed to his wife. The fifth clause, which occasions the controversy in this case, is as follows:

" *Fifth.* All the rest, residue and remainder of my estate, real, personal and mixed, of which I shall or may die seized and pos-

sessed, or to which I shall be entitled at the time of my decease, after paying my debts and funeral expenses and testamentary expenses and the legacies above bequeathed, I do give, devise and bequeath to my beloved wife, Lucretia M. Clay, and to her heirs, executors, administrators and assigns forever. And it is my desire and request that my said wife do sustain, provide for and educate Lucretia M. Wood, the daughter of my said adopted daughter, Josephine M. Wood. And it is my further desire and request that my wife do make the said Lucretia M. Wood, Josephine M. Wood and my nephews and nieces, the children of my brothers, Caleb S. Clay and George Clay, joint heirs after her death in the said estate, which by this will I have bequeathed to my said wife."

Shortly after the death of William W. Clay, his widow, Lucretia M. Clay, made her will, by which she undertook to give all of the property to persons other than the children of Caleb S. Clay and George Clay.

After the death of Lucretia M. Clay and the probate of her will, this action was brought to obtain a judicial construction of the will of William W. Clay, deceased, late of the city and county of New York, and for an accounting of the personal property bequeathed therein and a partition thereof, and for an account of the rents and profits and partition of the real estate devised therein.

*John F. Dillon, Rush Taggart* and *Harry Hubbard,* for the appellants.

*James L. Bishop,* for the respondents.

Van Brunt, P. J.:

I cannot concur in the conclusion arrived at by Mr. Justice Parker in this case. It seems clear to me that it was not the intention of the testator to limit the estate which he had given, devised and bequeathed to his wife in such absolute and unmistakable terms by anything that was subsequently contained in the will. It seems to me idle to suppose that the testator in one breath should give to his wife all the rest, residue and remainder of his estate and to her heirs, executors, administrators and assigns forever, and then in the very next sentence say that she should have only a life estate therein. The words do not require the assumption of any such inconsistent

action upon the part of the testator, and in my judgment such a limitation upon the estate given to the testator's wife would be contrary to his intentions.

In the very next sentence, after having given to his wife all the residue of his estate as absolutely as it was possible for language to do so, using words of succession, which were not at all necessary, giving it to her heirs, executors, administrators and assigns forever, he says: "And it is my desire and request that my said wife do sustain, provide for and educate Lucretia M. Wood, the daughter of my said adopted daughter, Josephine M. Wood. And it is my further desire and request that my wife do make the said Lucretia M. Wood, Josephine M. Wood and my nephews and nieces, the children of my brothers, Caleb S. Clay and George Clay, joint heirs after her death in the said estate which by this will I have bequeathed to my said wife," thus in the very last words of the clause declaring that he had given the estate to his wife.

How can such language be construed to be a limitation upon an absolute gift? It is a request. He wished her to do it; but he did not intend to impose any obligation upon her so to do unless she saw fit to comply with his desire and request. He did not intend to give these nephews and nieces a vested interest in this estate. He put the title in his wife, and then he says: "When you get through with it I would like to have you give it to the nephews and nieces." The testator did not give it to them; he did not intend to give it to them; he only made the request that his wife should do so, evidently intending to give her the option, if she saw fit, not to make such disposition of her estate, because it was hers; he said it was to be hers after his death; and it was the wife who was to give it — a thing which the testator never attempted to do. (*In re Hamilton,* L. R. [1895] 2 Chan. 370.)

The judgment should be affirmed, with costs.

FOLLETT, J., concurred.

PARKER, J. (dissenting):

I think both the argument and the decision of the court in *Phillips* v. *Phillips* (112 N. Y. 197) call for a reversal of the judgment. In that case the testator's will gave to his wife all of his property, real and personal, named her as executrix, and then pro-

ceeded as follows : " If she find it always convenient to pay my sister, Caroline Buck, the sum of $300 a year, and also to give my brother, Edwin W., during his life, the interest on $10,000 (or $700 per year), I wish it to be done."

The widow paid to the brother the annuity for a single year, and then stopped, not because she was unable, or because it was not convenient for her to pay, but because she chose not to pay. "The real intention (said the court) of the testator was one of two things. He meant to make the annuities to his brother and sister dependent upon the existence of a specific fact, or upon the choice and will of his devisee. If they rest upon the former, they become a gift from him ; if upon the latter, they have no existence outside of the choice of the widow." Whether the use of the word "wish," in the connection in which it was used, was sufficiently imperative and unequivocal to master the discretion involved in the absolute ownership previously given, or to rise only to the level of a request or suggestion, was said by the court to be the leading proposition involved.

As the primary question in every case involving the construction of a will is the intention of the testator, it was said that the use of the words "I wish" or "I desire," is by no means conclusive. They raise the question, but do not decide it. Its decision must depend upon these words considered in connection with the whole will. That the word "wish" is frequently used by a testator as equivalent to a command was asserted by the court, and the assertion followed by an argument to prove that it was in such sense that the testator used it. In course of such argument the court, after referring to the fact that the testator did not intend to make payment of the annuities dependent upon the choice of his wife, but upon her ability to pay, if not inconvenient to her, said : " Given that ability he says '*I wish it to be done.*' The words are not, I wish her to do it, or, I hope she will feel it to be her duty, or, I trust she will see the propriety of such payment to be made, but, *I, the testator, dealing with my own bounty to her* — '*I wish it to be done ;*' it is my wish, not hers, that I put behind the annuities." When, in the course of the argument, the court came to consider the effect of precatory words in wills, it said : " It· is perfectly well settled that what are denominated precatory words expressive of a wish or desire, may, in given instances, create a trust or impose

a charge. Without a detailed consideration of the cases, it is quite clear that, as a general rule, they turn upon one important and vital inquiry, and that is, whether the alleged bequest is so definite, as to amount and subject-matter, as to be capable of execution by the court, or whether it so depends upon the discretion of the general devisee as to be incapable of execution without superseding that discretion. In the latter case there can neither be a trust or a charge, while in the former there may be, and will be, if such appears to have been the testamentary intention."

I have thus fully referred to the decision in *Phillips'* case that it may more readily appear, as we proceed in the examination of the will before us, on what we found the conclusion, that both the argument and the decision in that case, when applied to the language of this will, call for a determination that upon the death of Lucretia M. Clay, so much of the estate originally devised and bequeathed therein to Lucretia M. Clay as remained, became vested in Josephine M. Wood, Lucretia M. Wood, the children of Caleb S. Clay and George Clay, share and share alike.

There are points of difference between the two wills which will be referred to later on, because they are substantial and entitled to consideration, but in the main the argument which found favor with the court in *Phillips'* case, seems to us alike applicable and controlling in this case. In this case the testator, after using language adequate to vest in his wife the residuary estate, continued : "And it is my desire and request that my said wife do sustain, provide for and educate Lucretia M. Wood, the daughter of my said adopted daughter, Josephine M. Wood, and it is my further desire and request that my wife do make the said Lucretia M. Wood, Josephine M. Wood and my nephews and nieces, the children of my brothers, Caleb S. Clay and George Clay, joint heirs after her death in the said estate which, by this will, I have bequeathed to my said wife." The determination in *Phillips'* case, that the use of the word " wish " is sufficient to raise the question whether the testator intended to. control and direct the disposition intended, necessarily determines that the word " desire," employed in this will, accomplishes the same result.

Indeed, the court said in that case that the words "I wish" or " I desire " have that effect. But if the word " desire " had not

been mentioned by the court, the holding that the word "wish" is sufficient for the purpose, was necessarily equivalent to a decision that the word "desire" effectuates the same thing, for the words are synonymous.

In Webster's International Dictionary it is said that "I *wish* you to do this" is a milder form of command than "I *desire* you to do this." In Webster's Unabridged Dictionary it is said: "A man *desires* his friend to write often; a merchant *desires* his clerk to be more careful in future. In this latter case, from the relations of the parties, *desire* is stronger than *request;* it implies a command or injunction."

In view of the decision in *Phillips'* case, there is no necessity to consider the relations existing between these parties, for the purpose of reaching a determination whether the word "desire" is sufficiently strong to present the question whether the testator intended by the use of that term to control and direct the disposition of his property in the manner suggested in his will, for it has already been determined as we have said. But as the relations which the parties bore to each other are proper to be considered in determining the meaning which the testator intended should be given to the word "desire," it should be borne in mind when considering the will in its entirety.

Before examining the will for the purpose of ascertaining whether, as a whole, it indicates a settled purpose on the part of the testator to do that which the use of the word "desire" suggests, it will be well to have in mind what persons, if any, were so related to the testator as would naturally entitle them to consideration by him in the disposition of his estate.

He had no living ancestors nor descendants, but he had a sister and brothers who had children, and he had an adopted daughter who was the mother of a young child, who was named after testator's wife. These near relatives and the adopted daughter and her child appear to have been the subject of careful consideration by the testator when he came to decide how to dispose of his property. His wife either stood first in his affections, or else he regarded it his duty primarily to assure to her such comfort as a reasonable amount of property would afford, so he provided that, after payment of debts and funeral expenses, his wife should have the house and lot in which they lived, and all the household furniture and contents,

together with the sum of $20,000, which sum was to be paid before any of the other legacies bequeathed by the will.

By the next clause, he gave to his sister and his brothers the sum of $5,000 each. By the fourth provision, he gave $1,000 to a son of his brother George Clay; $500 to a son of his other brother, Caleb S. Clay, and $3,000 to his adopted daughter. To avoid any possibility of these legacies being charges upon the real estate devised to his wife, he provided that if his estate should prove insufficient to pay all of the legacies in full, in addition to the devise and bequest to his wife, such legacies should be reduced proportionably. Then follows the fifth clause by which he gave all of the rest, residue and remainder of his property to his wife, and which also contains the provision hereinbefore quoted, in which he stated it to be his desire that his wife should sustain, provide for and educate Lucretia M. Wood, and that his wife should make the adopted daughter and her daughter and his nephews and nieces, children of his brothers, joint heirs after her death in the estate bequeathed to his wife by the will. He thus clearly marked out the objects of his bounty. And it is impossible to read the will without coming to the conclusion that he fully intended to provide adequately for the maintenance and comfort of his wife, and that his immediate relations, together with his adopted daughter and her child, should be benefited so far as possible, consistent with his primary scheme of assuring a reasonable competence to his wife. This result he sought to accomplish by devising and bequeathing to her a certain amount of his estate, and giving to his brothers and sister and adopted daughter fixed amounts, and providing for the turning over by his wife of that which should remain of his estate to the persons described, at her death.

The argument in *Phillips'* case, to show that the provision for the brother and sister in that case was not meant to be dependent upon the uncontrolled choice of the wife, seems to us clearly applicable to this one. There is nothing in the language employed which suggests any discretion on the part of his wife. She was not authorized to make selection between two classes, to add other persons to the class named, or to give more to some members of the class than to others. On the contrary, the will in effect declared it to be the testator's wish that the persons who should constitute the

designated class at the time of the death of testator's wife, should share equally in the estate remaining.

It may be further observed in this connection that the language employed fulfills all the conditions adequate to create a trust by precatory words.

(1) Because there is no hint of any discretion to be exercised by the wife; on the contrary, the language employed excludes any idea of option on her part to make other disposition of the estate remaining than that suggested by the testator.

(2) The property which the testator desired should be disposed of in the manner stated is definitely pointed out as "the said *estate* which by this will I have bequeathed to my said wife."

(3) The persons who are intended as beneficiaries of the testator's bounty are clearly pointed out, namely, nephews and nieces of the testator, together with his adopted daughter and her child.

There was also present an additional circumstance, always considered by the court in the construction of wills, and to which reference has already been made, namely, the relation and situation of the testator towards those whom he apparently desired to benefit. His scheme for the disposition of his property was undoubtedly, as we have seen from an examination of the whole will, to give something to his brothers and sister, who, in the ordinary course of nature, would pass away shortly before or after the death of his wife; to provide for his wife amply during her life, and to secure such of the property as should remain to his relatives and his adopted daughter and her child.

I think it very clear that such was his purpose, and, having reached that conclusion, the authority to which reference has so frequently been made, requires us to hold that the words employed in the fifth paragraph of the will, considered in connection with the entire instrument, created a trust in respect to so much of the property devised and bequeathed by the second and fifth paragraphs as should not be used by the widow during life.

The respect in which there is a marked difference between this will and the one in *Phillips'* case, and which the respondents urge is of such a character as to call for an affirmance of the judgment, will now be considered. In this will the testator, in the second paragraph, followed the devise and bequest with the words, "and to

her heirs and assigns forever," and the gift of the residuary estate, by the fifth paragraph, was followed by the words, " and to her heirs, executors, administrators and assigns forever." Had these words been omitted it would be difficult to find any foundation whatever for a claim that this case should not be controlled by the rule in *Phillips'* case and in *Colton* v. *Colton* (127 U. S. 300). In considering this conceded difference in form, it may be said in the first place, that without the use of these words the language employed was sufficient to vest the estate in the testator's wife. Their use did not enlarge the estate devised to her. Without them, and in the absence of the clause containing the precatory words, the entire residuary estate, as well as the estate devised by the second clause, would have vested in her, and, therefore, so far as the vesting of the estate is concerned, the result of the language used in this case is precisely the same as in *Phillips'* case. There, although these words were not used, the court held that the language employed was sufficient to vest absolutely the estate in the testator's wife. To sustain respondents' contention of an effective distinction between the two wills in this respect, some other ground for it must be found than that the residuary clause vested the estate in Mrs. Clay because of the words, " and to her heirs, executors, administrators and assigns forever," for the language used in *Phillips'* case was sufficient to accomplish the same result. Such a ground is not furnished by the suggestion that the devise and bequest to the wife in the legal and technical form adequate to convey the legal estate in fee, cannot be followed by an imposition upon the holder of such legal estate of a trust in respect to the whole or any part thereof because of repugnancy or inconsistency.

There can only be repugnancy in respect to estates of the same character. Where there is a disposition of the whole legal estate in fee, followed by an attempt to create a remainder in fee, the last disposition is repugnant. But there is no repugnancy when the testator gives the legal estate in fee and then imposes a duty upon the holder of the legal estate which constitutes in law a trust.

Had the testator devised and bequeathed to his wife and to her " heirs and assigns forever a house and lot (describing them), but in trust, nevertheless, for the following purposes, to wit, to sustain, provide for and educate Lucretia M. Wood, the daughter of my

FIRST DEPARTMENT, DECEMBER TERM, 1895.    [Vol. 91.

adopted daughter, Josephine M. Wood, and upon the further trust, that my wife do make the said Lucretia M. Wood, Josephine M. Wood and my nephews and nieces, children of my brothers, Caleb S. Clay and George Clay, joint heirs after her death in the said estate, which by this will I have bequeathed to my said wife," it would not be contended that a trust was not created by words apt and sufficient. In such a case it would not be questioned, but the use of the phrase "heirs and assigns forever," were intended as words of limitation marking out the legal estate, and not as indicating any disposition of the beneficial interest. As used in this will, their legal effect is not different, if, from the whole will, it appears that the testator intended to direct his wife to make over the estate remaining at her death to the persons described in his will.

In construing this will, therefore, these words seem only to be of importance in arriving at the intention of the testator. Did he intend by their use that not only the legal estate, but the beneficial interest as well, should vest absolutely in his wife? Unquestionably he intended to, and did, vest the legal estate in her; but, in view of the exact and definite expression of the desire of the testator as set forth in the fifth paragraph of his will, considered in connection with the whole scheme of the will and in the light of the authorities to which we have referred, it seems quite clear that they were used as words of limitation marking out the legal estate, and nothing more. That being the case the expression of the testator's desire was just as effectual to impose a trust upon the real and personal estate devised and bequeathed to Mrs. Clay as if the testator had used the most apt and technical language known to the law for the purpose of expressing his intention to creat such a trust. "It is one of the fixed rules of equitable construction that there is no magic in particular words; and any expressions that show unequivocally the intention of the parties to create a trust will have the same effect." (Hill on Trustees [2d Am. ed.], 83.)

The construction which I have suggested should be given to the will, and which seems to be warranted and required by the argument and decision in *Phillips'* case, makes the testator's wife the trustee of the beneficial interest of that part of the estate remaining at the time of her death for the persons described in the concluding paragraph of the fifth clause.

This conclusion works out the wish of the testator, as expressed in his will, and is just. It was his property to dispose of as he chose. He undertook, by his will, which is nothing but his wish expressed in writing, and subscribed and attested as required by statute, to make disposition of it. The person whom he trusted to execute his wishes did not attempt to carry them out. On the contrary, in violation of the confidence bestowed upon her, a confidence justified by the marriage relation, she attempted by her own will, and before the testator's will was even probated, to exclude from participation in his bounty his blood relations. Her conduct was flagrantly disloyal and shocking to the moral sense. And it is fortunate that this attempted wrong can be prevented by the application of those rules which courts of equity are allowed and required to enforce for the purpose of giving effect to the intention and desire of a testator, when not in conflict with some positive rule of law or public policy.

The trustee failed to execute the trust reposed in her. She attempted to make disposition of the property it is true, but the attempt was to make an unauthorized disposition of it, and, therefore, her act was illegal and of none effect.

As the trust remained unexecuted upon her death, the estate remaining became at once vested in the *cestuis que trust* by operation of law. (*Watkins* v. *Reynolds*, 123 N. Y. 211.)

I advise a reversal of the judgment.

Judgment affirmed, with costs.