CASE 53.—ACTION BY LILLIE L. WOOD, EXECUTRIX OF
    CHARLES W. WOOD, DECEASED, AND OTHERS
    AGAINST J. N. WOOD FOR A CONSTRUCTION OF
    THE WILL OF DECEASED.—December 12.

# Wood, &c., v. Wood, &c..

Appeal from Nicholas Circuit Court.

L. P. FREYER, Circuit Judge.

From the judgment defendants appeal—Affirmed.

1. Wills—Construction—Presumption Against Partial Testacy.—
   It is presumed that a testator intended to dispose of his
   entire estate, and the law favors such construction as will
   carry such intent into effect.
2. Same—Estates Created.—Testator devised real estate to a
   sister for life with remainder to her children, gave property
   to his parents for life with gift over, and devised and be-
   queathed to his wife all the remainder of his estate, and
   declared that it was his request that his library should be
   kept intact for a specified period, and that, if at the end of
   that period his brother showed in the judgment of the wife
   sufficient promise, it was testator's desire that she should
   give the library to him, and further provided that it was
   his "request" that, should the wife die without heirs and the
   estate devised should be intact, she should will the same to
   such of his brothers and sisters as it might seem proper to
   her.   Held, That under Ky. Stats., 1903, section 2342, pro-
   viding that, unless a different purpose appears by express
   words or necessary inference, every estate in land created
   by will without words of inheritance shall be deemed a fee
   simple, the wife acquired an estate in fee.
3. Same—Precatory Trusts.—To create a trust and make preca-
   tory words operative in a will, it must appear that the estate
   is not an absolute estate; that the disposition thereof is not
   unrestricted; that the subject of the devise and the devisees
   are certain and the trust definite; that the language used is
   positive and imperative, and not such as indicates a mere

desire on the part of the testator which may be complied with or not at the pleasure of the legatee.

4. Same.—Testator devised his residuary estate to his wife absolutely, and provided that "it is my request" that my law library be kept intact for a specified period, and "it is my further request" that my wife give the library to my brother if he shows in the judgment of my wife, "sufficient promise," and "it is my further request" that, should my wife die without heirs of her body and the estate devised to her be intact, she "will and devise" the same to such of my brothers and sisters as might seem proper to her. Held not to create a precatory trust.

JOHN C. STROTHER for appellant.

STROTHER & WYCOFF of counsel.

POINTS AND AUTHORITIES.

1. A fundamental rule in the construction of will is, that effect must be given as far as practicable to every part of the will in order to ascertain the intention of the testator. (Moran, etc., v. Dillehay, 8 Bush, 435; Peynado's Dev. v. Peynado's Ex., 82 Ky. 2; Morse, etc., v. Cross, 17 B. M., 735; Guthrie v. Turner's Ex., 14 Ky. Law Rep., 336.)

2. The appellee took only a life estate or a defeasible fee in the event of her death without heirs of her body. (22 Am. & Eng. Ency. of Law, 1171; Colton v. Colton, 127 U. S , 300; Cochrill v. Armstrong, 31 Ark., 580; Warner v. Bates, 98 Mass., 274; Foster v. Wilson, 68 N. H., 241; Daniel v. Thompson, 14 B. M., 533; Best v. Best, 88 Ky., 564; Degman, etc., v. Degman, etc., 97 Ky., 717; Caroll's Heirs v. Carroll's Heirs, 12 B. M., 637; Hamlin v. U. S Express Co., 107 Ill., 443.)

3. When there are repugnant or conflicting clauses in the will, the last clause prevails. (Hunt v. Johnson, etc., 10 B. M., 344; Nelson v. Nelson, 2 Ky. Law Rep., 64; Guthrie v. Turner's Ex., 14 Ky. Law Rep., 336.)

4. The will under construction in this case creates a precatory trust. (Bohon v. Barrett, 79 Ky., 382-3; Major v. Herndon, 78 Ky., 123; Harrison v. Harrison's Admr., 2 Gratt., 1; Anderson v. McCullough, 3 Head (Tenn.), 614; cases examined and distinguished: Sale v. Thornberry, 86 Ky., 266; Igo v. Irvine, 24 Ky. Law Rep., 1165; Webster v. Wathen, 97 Ky., 318; Goslee's Admr. v. Goslee's Ex., 29 Ky. Law Rep., 654.)

5. The fact that the will contains apt words to devise a fee simple estate to appellee,. does not negative the fact that a trust was intended to be created. (Sale v. Thornberry, 86 Ky., 268; Noe v. Kern, 93 Mo., 367, and cases cited in next point following.)

6. The direction of the will to appellee to devise the estate to such of testator's brothers and sisters as may seem proper to her, is valid and enforcible, and is not void for want of certainty. (Attorney General v. Wallace's Dev., 7 .B. M., 611; Daniel v. Thompson, 14 B. M|, 533; Black v. Herring, 79 Md., 146; Dexter v. Evans, 63 Conn., 58; Holsen v. Rockhouse, 83 Ky., 233; Under on Wills, p. 1152, section 792; Degman v. Degman, 98 Ky., 719; Handley v. Wrightson, 60 Md., 198.)

7. The distinction between a precatory trust and an attempt to devise an estate after devising a fee simple. (See Bohon v. Barrett, 79 Ky., 382; Hill on Trustees, p. 92; Perry on Trusts, chapter 4; 66 Penn., 402; 1 N. H., 228, as to precatory trusts and Cox v. Anderson's Admr., 24 Ky. Law Rep., 721, and Clay v. Chenault, 108 Ky., 77, as to the attempt to devise an estate after devising a fee simple.)

8. The second paragraph of the answer of J. N. Wood, individually, and as administrator of Nannie N. Wood, presented a valid defense.

9. The court erred in adjudging that appellee took a fee simple estate under the fourth clause of the last will of Charles N. Wood.

10. The court erred in striking out the second paragraph of the answer of J. N. Wood, individually; and as administrator of Nannie N. Wood, and in failing to construe the will in the light of the facts stated in that paragraph.

HOLMES & ROSS and JOHN P. McCARTNEY for appellee.

POINTS AND AUTHORITIES.

1. Lillie L. Wood takes the fee simple and absolute estate. (Wilkerson v. Chambers (Pa. Sup.), 37 A., 569; Kent's Com., vol. 4, 270; Clay v. Chenault, 21 Ky. Law Rep., 1485; Mitchell v. Morse, 77 Me. 423, 52 Am. Rep. 781; Ky. Stats., section 2342; Barth v. Barth, etc., 18 Ky. Law Rep., 840; McCallister v. Bethel, 97 Ky., 1; Cralle v. Jackson, 26 Ky. Law Rep., 417; Cox, etc., v. Anderson's Admr., 24 Ky. Law Rep., 721; Galloway, etc., v. Durham, 26 Ky. Law Rep., 445; Ramsdell v. Ramsdell, 21 Me., 288! Jackson v. Bull, 19 ohns, 20; Clay, etc., v. Wood, etc., 36 N. Y. Supp. 317, 47 N. E. 274; 2 Blackstone Com., 381;)

2. No precatory trust created by the will. (Mitchell v. Mitchell,

Wood, &c., v. Wood, &c.

143 Ind. 133, 42 N. E. 465; Second Reform Church v. Disbrow, 52 Pa. St., 219; Williams v. Worthington, 49 Md. 572, 33 Am: Rep. 286; Durant v. Smith, 34 N. E., 190; Story Eq. Jur., section 1069 et seq; Wright v. Adkyns, — Turn. & R., 157; Morse v. Bishop of Durham, 10 Ves., 535; Hill v. Page (Tenn.), 36 S. W., 735; Page on Wills, section 611; Aldrich v. Aldrich (Mass.), 51 N. E., 449; Pom. Eq. Jur., section 1610 and note; Foose v. Whitmore, 82 N. Y. 405, 37 Am. Rep. 572; Knott v. Cottee, 2 Phil., 192; Knight v. Knight, 3 Beaver R., 148; Jarman on Wills, 693; Pennock's Est., 59 Am. Dec., 724; In re Gardner, 23 N. Y. Supp., 35 N. E. 440; Ellis v. Ellis' Admr., 15 Ala. 296, 50 Am. Dec. 132; Hopkins v. Glunt, 111 Pa. St., 287; Howard v. Carusi, 109 U. S. 725, 27 L. Ed. 1091; Bryan v. Milby, 6 Del. Cha., 13 L. R. A. 563; Holmes v. Dally (Mass.), 78 N. E., 513; Leckmore v. Lavie, 2 Mylne K., 201; in re Whitcomb, 86 Cal. 265; 24 Pac. 1028; Sale v. Thornbury, 86 Ky., 266; Clay v. Chenault, 108 Ky., 105; Barth v. Barth, 18 Ky. Law Rep., 841; Cox v. Anderson, etc., 69 S. W., 953; Humphrey v. Potter, 70 S. W., 1063; Igo v. Irvine, 70 S. W., 837; Goslee's Admr v. Goslee's Exr., 29 Ky. Law Rep., 654; White v. Orvine, 24 Ky. Law Rep., 2458; Webster v. Wathen, 17 Ky. Law Rep., 32; Thurston, Admr., v. Prather, etc., 25 Ky. Law Rep., 1137.)

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Charles W. Wood, a distinguished lawyer and citizen of Nicholas county, Kentucky, died in June, 1904. He left a will, which in due time was regularly probated, and his wife qualified as administratrix, and entered upon the discharge of her duties. The will disposed of a considerable estate, and, there being some question raised as to the interest which his wife, Lillie L. Wood, took under said will, she filed a suit in the Nicholas circuit court seeking a construction thereof. All of the other devisees named in the will were made parties defendant to the suit. Upon final hearing, the circuit court adjudged that Lillie L. Wood, by the terms of the will of her deceased husband, took a fee-simple title to all his property, except that specifically described in .para-

graphs 2 and 3 of said will. It was earnestly contended in the lower court by some of the devisees that Lillie L. Wood took only a life estate in said property, and, the court having decided adversely to their contention, they have prosecuted this appeal.

The will in question is in words and figures as follows:

"I, Charles W. Wood, of Carlisle, Nicholas county, Kentucky, do hereby make and publish this as my last will and testament.

"First: I will that all my just debts, including funeral expenses, be paid.

,'Second: I will and devise to my sister, Maggie Wood Wheelock, of Troup, Texas, during her natural life and at her death to her children, share and share alike, a certain lot of real estate lying and being in the corporate limits of Troup, Smith county, Texas, a part of the Eason Gee League, being the same land conveyed to me by Ben Cross and wife by deed dated March 12, 1902, and recorded in said Smith county, in Book 75, page 332, to which deed a reference is made for a more particular description of said land. Said land shall be held by her free from the control and any debts of the husband now living, or which she may hereafter have, and the said land shall not be sold or mortgaged or in any way encumbered as it is now conditioned, or as the proceeds arising from it may hereafter be invested for a period of thirty years. The said land may be sold and re-invested in rent producing real estate but the same shall be done upon the order of a court of proper jurisdiction, and then only when it shall appear to said court to be to the best interest of the devisees under this section of this will. All accretions in value shall be held and treated as a part of the capital invested.

"Third: I will and devise to my father and mother, J. N. Wood and . Nannie M. Wood, during their natural life, the farm upon which they now reside, including all the farming implements and all the live stock thereon, except one horse named 'Jack.' It is my will that at the death of my father and mother or the one surviving the longest, that the income from said farm, or from the property in which the proceeds of it may be invested shall be used to maintain my sisters, Alice Wood, Nettie Wood and Lizzie Wood, so long as they remain single, and in the event of the marriage of any of them, the said income shall be used for the support of the other or others.

"In the event of the marriage of all of them or the death of those unmarried, the said farm or the property in which the proceeds may have been invested shall descend to my brothers and sisters, share and share alike.

'The property devised under this section of the will shall not be mortgaged or sold except the proceeds be re-invested in rent producing real estate, except so much, not exceeding $2,000.00, as may be necessary to procure a home for the devisees under this section. If so sold it shall be the duty of the purchaser to see that the proceeds are re-invested as herein provided.

"Fourth: I will, devise and bequeath to my wife, Lillie L. Wood, all the remainder of my estate, real, personal and mixed. Said estate consists of 137 1-2 acres of land in Nicholas county, Kentucky, and being the same land conveyed to me by W. T. Buckler and wife on October 29, 1901, and the deed for the same being recorded in Deed Book 19, page 235; also an undivided one-half interest in a tract of 105 acres of land conveyed to W. B. Ratliff and me by Frank P.

Call on July 10th, 1900, the deed for the same being recorded in Deed Book 18, page 279. Reference is made to said deeds for a more particular description of said lands. Also certain houses and lots in Carlisle , Kentucky, on Main street, the whole block being abutted by Main street on the north, by the property of Cain Brothers on the west; by Sugar Tree alley on the south and by the lot of C. C. Ratliff on the east.

"My personal property consists of stock in the Mutual Trust Company, the Deposit Bank of Carlisle, Kentucky, and in the Van Buren Iron and Manganese Company, also my library and other personal belongings.

"All other property, if any, which may not have been specifically named and devised I give to my wife, Lillie L. Wood.

"Fifth: It is my request that my law library be kept intact for a period of five years, and if at that time my brother, B. H. Wood, shows in the judgment of my wife sufficient promise, it is my further request that she give to him the said library.

"It is my further request that should my wife die without heirs of her body, and the estate herein devised to her be intact that with the exception of the sum of $5000.00 she will and devise the remainder to such of my brothers and sisters as may seem proper to her.

"It is my further request that no monument exceeding the price of $250.00 be placed at my grave.

"Sixth: I nominate and appoint my wife Lillie L. Wood as executrix of this my last will and request that she be permitted to qualify without bond.

"It is my further request that no inventory of my estate be required to be filed, since there is but one

legatee or devisee except the special bequests herein provided in sections two and three.

"In testimony whereof I have hereunto set my hand this January 2nd, 1904."

The testator had no children. He left surviving him besides his wife, appellants, J. N. Wood, his father, Nannie M. Wood, his mother, and his brothers ·and sisters, the other appellants. It will be observed that in item 2 of said will he provides a comfortable home for his sister, who was living in Texas, by giving her certain real estate to hold during her natural life, and at her death to go to her children, share and share alike. This clause of the will is so drawn that his sister, even though she desired to do so, could not sell or dispose of, or even encumber this property, which was intended to furnish her a home during her life. In item 3 he makes a commendable provision for his aged father and mother by giving to them the old home farm, with all of its farming implements and stock, save one horse, "Jack," which he reserved, and in this clause he provided, further, that, upon the death of both his father and his mother, the income from the farm, or other property in which the proceeds thereof might be reinvested in the event of a sale thereof, as provided for in this clause, should be used to maintain his three sisters, Alice Nettie, and Lizzie, so long as they remained single, and, as they married, if any of them should, the income from said farm should be used to support the other or others during the period that they remained single, and, in the event of the marriage of all of them or the death of those unmarried, then, in that event, the farm or the proceeds thereof should descend to his brothers and sisters, share and share alike. In Item 4 he devises to his wife, the appellee

herein, all of the remainder of his estate, real, personal, and mixed. He then proceeds in this same clause to describe the property which he intended to pass to his wife, and at the close thereof he uses this language: "All other property, if any, which may not have been specifically named and devised, I give to my wife, Lillie L. Wood." This clause, therefore, clearly disposes of his entire estate except so much as had been previously disposed of in items 2 and 3.

It is insisted for appellee that, by this clause of the will, she takes the absolute fee-simple title to all of the property described therein; while, on the other hand, it is argued with much force for appellants that item 5 of said will shows clearly an intent on the part of the testator to limit the estate of his wife in the property devised to her to a life estate. The language referred to in item 5 is that, in which he requests his wife to keep his law library intact for a period of five years, and, if, at the end of that time, his brother, B. H. Wood, in her judgment shows sufficient promise, that she should give to him the library, and also the language that in the event his wife should die without heirs of her body, and the estate devised to her be intact, that, with the exception of the sum of $5,000, she should will and devise the remainder to such of his brothers and sisters as to her seemed proper. It is undoubtedly true that under the fourth clause of the will Lillie L. Wood is given the fee to all of the property which her husband owned except that which is specifically devised in items 2 and 3. No stronger language could have been used to give her an absolute estate in said property. In arriving at the intention of the testator, the will must be read as a whole, and each item must be read in connection with every other item thereof,

and, where it can be done without doing violence to the evident intention of the testator, it should be construed as to uphold each clause of the will. In item 2 the testator created a life estate with remainder over upon the death of the life tenant to her child. In item 3 he created another life estate in favor of his father and mother, and, if they died before his single sisters, or any one of them married, then those remaining single were to have a life estate in this property, and upon the marriage or death of all of them then this property described in item 3 was to go in fee to his brothers and sisters or their heirs.

From the reading of these two clauses in the will, the conclusion is irresistible that the draughtsman knew perfectly well how to create a life estate, for he uses language about which there can be no mistake, words and terms which are susceptible of no double meaning; and, when he comes to that clause of his will which is the subject of contention in this litigation, to-wit, item 4, he uses language by which he shows an unmistakable intention to give to his wife an absolute estate in all of the property described therein. The question which naturally presents itself, then, is: What was the purpose of item 5 if it was not to limit in some wise the bequest made in item 4? It will be observed that the language in item 5 is very different from that which is used in items 2 and 3. Instead of the words "I give," or "I devise," he uses the words, "I request," etc., "that you give," etc., clearly indicating that the testator, while recognizing that the property was his wife's, desired, without attempting to control her action, to let her know what disposition thereof would be pleasing to him under certain conditions and in certain events. It is presumed that the testator intended to dispose

of his entire estate, and the law favors such construcon as will carry into effect this intent. The construction sought by appellee disposes of the entire estate, whereas that sought by appellants leaves a portion of the estate undisposed of. Chancellor Kent, in his Commentaries (volume 4, p. 270), says: "If there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A. in fee and if he dies possessed of the property without lawful issue, the remainder over, or remainder over of the property, which he dying without heirs should leave or without selling or devising the same, in all such cases the remainder over is void as a remainder because of the preceding fee, and it is void by way of executory devise because this limitation is inconsistent with the absolute estate or power of disposition expressly given, or necessarily implied by the will. A valid executory devise cannot subsist under an absolute power of disposition in the first taker." And in Mitchell v. Morse, 77 Me. 423, 1 Atl. 141, 52 Am. Rep. 781, it is said: "A devise of real estate without words of limitation vests in the devisee an estate in fee simple; and this result is not defeated by a devise over of the remainder. When by the terms of the devise an estate in fee simple is given, the addition of a devise over of a remainder is void, because, the whole estate having already been disposed of, there is nothing for it to act upon." Section 2342 of the Kentucky Statutes of 1903, is as follows: "Unless a different purpose appears by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple or such other estate as the grantor or testator had power to dispose of." When we consider the language used in the fourth

clause of the will in connection with the section of
the statute above quoted, it is clear that Lillie L.
Wood is the owner of the fee-simple title of the prop-
erty described therein with full power of disposi-
tion. Her husband intended that she should have
this property to do with as she pleased. As stated
above, the testator was a lawyer of prominence, and
had acquired a comfortable estate. During all of the
years of his married life his wife had, no doubt,
labored with him, and counseled and advised him in
all of his undertakings. She had, most likely, aided
and assisted him in accumulating the property of
which he was making disposition, and it is but nat-
ural to suppose that when in item 4 he said he devised
to her certain property that he intended that she
should have it absolutely to do with as she pleased,
and this idea is very much strengthened when items
4 and 5 are read in connection with item 6 of the will,
which requests that no inventory of his estate be
required to be filled, "since there is but one legatee
or devisee except the special bequests herein pro-
vided in sections two and three." This legatee or
devisee referred to in item 6 is none other than his
wife, referred to in item 4.

In the case of Cox, etc., v. Anderson's Adm'r, 69
S. W. 953, 24 Ky. Law Rep. 721, this court, in con-
struing the following language of the testator, to-wit:
"I give, devise, bequeath to S. my wife, all of my
cash, notes and lands and bank stock and my other
stocks that I may have and also all my live stock,
growing crops, house-hold and kitchen furniture, to
have and to hold for her own use and benefit. When
she, S. is done with it I give to Mt. Zion Church as
an endowment $1,000.00 the proceeds of which are
to go paying the expenses of the church"—held that:

"The church could not recover said sum. After devising the fee-simple title to his wife, the subsequent expression of a desire to give a part of the same property to the church was ineffectual." To the same effect is Barth v. Barth, 38 S. W. 511, 18 Ky. Law Rep. 840; McCallister v. Bethel, 97 Ky. 1, 16 Ky. Law Rep. 774, 29 S. W. 745; Cralle v. Jackson, 81 S. W. 669, 26 Ky. Law Rep. 417. The case of Clay v. Wood, etc., 91 Hun, 398, 36 N. Y. Supp. 317, is very similar to the case at bar. In that case the will, after directing the payment of certain debts and particularly a mortgage debt upon the home of the testator, gave to the wife and her heirs and assigns forever the house and lot absolutely. Then, after making provision for sundry relatives, he devised the rest and residue of his estate to his wife and her heirs forever, and followed this devise with a request and desire that his wife should sustain and provide for one W., and should make said W. and certain other relatives of the testator joint heirs after her death in the estate bequeathed to her. The court, in construing this will, held that the wife took an absolute and beneficial interest in all of the property devised and bequeathed to her, and that the words in the final clause in the will gave no interest to the persons named therein, and created no trust for their benefit. The will in this case is so like the will under consideration that we quote from the opinion in this case at some length: "What was the dominant intention of Mr. Clay in making his will as he did? To discover that, we must take into consideration the whole scheme of the will, and weigh the expressions which he has made use of when defining the interest of his wife. * * * His general scheme was to give everything to his wife, upon his death, except the

legacies which he gave by the third and fourth clauses. Where there is an absolute gift of real or personal property, in order to qualify it or cut it down, the latter part of the will should show an equally clear intention to do so. * * * That is a general rule; and can it be said of the concluding clauses of this fifth paragraph that it stands the test? We cannot think so. It undoubtedly contains the desire and request of the testator that his wife should make the persons named her 'joint heirs' after death; but, in view of the very emphatic and precise language which he had seen fit to employ in defining the estate which his wife should take in his property, it would be going too far in the effort to give effect to testator's desire to hold that it dominated his previous expressions of intention and affected their legal force and significance. * * * Whether the precatory words in a will shall be accorded such force as to deprive the donee of the absolute right of disposal, and thereby qualify the beneficial interest in the gift, must be determined in connection with what may be gathered from the rest of the will as an intention which would be reconcilable with the idea of a trust imposed upon the legal estate. When to impose such a trust would be to nullify previous expressions in the will, and to create a repugnancy between its different parts, then the rules of construction forbid the attempt. * * * Thus we see that the pivotal point of construction is as to the significance of the expressions used by the testator when giving his estate to his wife, and the inference to be drawn therefrom. In our view they are unmistakable, and create an atmosphere about the instrument of an entire subjection of the claims of others upon his bounty to the paramount claim of his wife, and to

her ultimate testamentary disposition. In this case we can only read the language in which the testator expresses his desire and request in the light of the emphatic language previously used in the will, and, as so read, award to it the force of a suggestion and an expectation, which, however strongly phrased, were only morally binding upon the widow." In the case at bar, the testator in item 4 of the will used language which in unmistakable terms conveyed to his wife the absolute fee to the property described therein, and, adopting the language of the learned judge in the opinion just quoted, "we can only read the language in which the testator expresses his desire and request" in item 5 "in the light of the emphatic language previously used" in item 4 "and, as so read, award to it the force of a suggestion and an expectation, which, however strongly based, were only morally binding upon the widow."

We come next to a consideration of the question as to whether or not a precatory trust was created in the will. If the devise is in fee and absolute, precatory words following cannot cut down and destroy the absolute devise. Justice Story, in his work on Equity Jurisprudence (section 1069) says: "The doctrine of thus construing expressions of recommendation, confidence, hope, wish, and desire into positive and peremptory commands is not a little difficult to be maintained upon sound principles of interpretation of the actual intention of the testator. It can scarcely be presumed that every testator should not clearly understand the difference between such expressions, and words of positive direction and command; and that, in using the one, and omitting the other, he should not have a determinate end in view. It will be agreed on all sides that, where the intention

of the testator is to leave the whole subject, as a pure matter of discretion, to the good will and pleasure of the party enjoying the confidence and favor, and where his expressions of desire are intended as mere moral suggestions to excite and aid that discretion but not absolutely to control or govern it, there the language cannot and ought not to be held to create a trust. Now, the words of recommendation and other words precatory in their nature imply that very discretion as contradistinguished from peremptory orders; and therefore ought to be so construed, unless a different sense is forced upon them by the context. Accordingly, in modern times, a strong disposition has been indicated not to extend this doctrine of recommendatory trusts; but, as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peremptory sense." Page on Wills, section 611, thus states the rule: "Where testator expresses a request or makes a suggestion as to the disposition at the death of the devisee of such property as the devisee does not dispose of during his lifetime, such words do not create a trust." In Pomeroy on Equity, section 1016, and note, it is said: "In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner. The modern decisions have adopted a rule and require the intention to exist as a fact and to be expressed in unequivocal language. No other conclusion can be

reconciled with these general principles of construction which are based upon reason and universal experience." In order to create a trust and make precatory words operative in a will, it must appear that the estate is not an absolute estate, and that the disposition thereof is not unrestricted; that the subject of the devise and the devisees must be certain, and the trust definite, and the language used must be positive and imperative, and not such as would indicate a mere wish or desire on the part of the testator, which might be complied with or not at the pleasure or discretion of the legatee. The latest enunciations of this court upon this subject are the cases of White v. Irvin, 74 S. W. 247, 24 Ky. Law Rep. 2458; Igo v. Irvin, 70 S. W. 836, 24 Ky. Law Rep. 1165; and Goslee's Adm'r v. Goslee's Ex'r, 94 S. W. 638, 29 Ky. Law Rep. 654, and in each of these cases the principle above announced is clearly upheld.

Measured by this rule, we find that the will before us is lacking in all of the elements which go to create a precatory trust. In the first place, the estate is given to Lillie L. Wood absolutely; second, her disposition thereof is unrestricted; third, the devise is not definite, the devisees are uncertain, and the language is such as to indicate a mere desire and could not in any sense be construed to be a command.

For the reasons indicated, the judgment of the lower court is affirmed.