### Hagan v. Muir.

(Decided May 18, 1937.)

J. W. HOTTELL for appellant.

ERNEST N. FULTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

J. W. Muir, a citizen and resident of Nelson county, Ky., died testate, in 1907. By his will he disposed of a large estate which he devised to his wife and seven children—six sons and a daughter, the latter being the appellant in this appeal. There is involved in this appeal the construction of that part of testator's will by which he devised a certain farm to his son Henry L. Muir, and for the purpose of construing that part of the will, it becomes necessary to take into consideration certain other parts of the will, which read as follows:

> "My farm conveyed to me by my brother, John Muir, near Stringtown, Nelson County, I give to my son, Charles W. Muir, he to be charged therewith in the settlement of my estate with ten thousand dollars. Joseph, under conditions herein imposed, will take the farm I bought of C. C. Brown at ten thousand dollars and Henry will take my

home farm including the part of the Coleman farm adjoining, at ten thousand dollars subject to such conditions as are imposed herein, the balance of my estate taking into consideration the above charges and taking into consideration certain charges against my children contained on a small account book which I will leave as a part hereof and will be found herewith, will be divided in kind among my children and my wife, Florida, intending to give her and each one of my seven children one equal eighth part of my estate. * * *''

On August 15, 1905, testator wrote the following codicil to his will:

''I make the following codicil to my will written some time ago the date not recollected. August 15, 1905. When my daughter Mary, was married to Robert J. Hagan I gave, by way of check, two sums of money amounting to about five hundred and sixty eight dollars and I have today signed checks or indorsed checks to her for ten thousand dollars and with these amounts I wish her to be charged in the settlement and distribution of my estate. * * *''

In the original will testator made no specific devise to appellant except that she would take one-eighth part of his estate, but by the above codicil he devised to her a sum in excess of the values to be charged to appellee and the other two sons for the land devised to them.

Pursuant to that part of the will by which the testator requests appellee not to sell the farm devised to him ''but to allow his mother and sister to live with him as long as it is their desire to do so,'' appellant claims to own some interest in the land devised to appellee, claiming to have the right to return to the farm and reside thereon if she should desire to do so. Appellee, claiming to be the owner of the land in fee simple, brought this suit in the Nelson circuit court for the purpose of quieting his title to the land, alleging that appellant, defendant below, ''is now setting up claims to and in the said farm which are adverse and hostile to plaintiff's right and title, that she is claiming that she has a life estate in the said farm or tract of land and that this plaintiff has no right to sell or convey said tract or parcel of land or any part thereof and that she has written to parties with whom he was about to contract for

sale of part of said tract of land and made claims that she had an interest in said tract or parcel of land and that she has stated to various and divers persons that she has an interest in said farm and that this plaintiff had no right to convey same." He further alleged that the claims, statements, and conduct of defendant have and now are greatly and irreparably injuring him and interfering with his right to sell his property, etc. He further alleged that his mother died several years ago, and that defendant married Robert J. Hagan more than thirty years ago and had lived and resided in Louisville, Ky., with her husband and family since her marriage and has never evinced or shown any desire to live on the home farm or to live in the house on same.

Defendant filed motion to strike from the petition the allegations that defendant married more than thirty years ago and lived in the city of Louisville with her husband and since her marriage she has never evinced or shown any desire to live on the farm in question or to live in the house on same, and moved to strike certain other allegations not material to a determination of the issues, since the action was finally treated as one to construe the will. Without waiving the motion to strike, a general demurrer to the petition was filed and the court overruled the motion to strike and the demurrer. An agreed order was entered by counsel of the respective parties agreeing that the action should be treated as an equitable action to construe that portion of the will in controversy and not an action to quiet title. The case was then submitted on the record as we have indicated, and the court entered judgment adjudging that appellant has no title to or interest in the land in question and that the plaintiff, appellee, is the sole owner in fee simple of the said land, free from any claims of any kind and character of the defendant. This appeal follows.

It is the contention of appellant that the words "subject to such conditions as are imposed herein," appearing in that part of the will devising to appellee the farm in question, when read in connection with the later reference to the devise wherein testator requested appellee "not to sell the same but to allow his mother and sister to live with him as long as it is their desire to do so," created a binding condition or precatory trust against the farm, and that by reason thereof appellant owns an interest in the farm and has the right to return

to it and live on it with appellee any time she may desire to do so, and to support this position she relies on section 2066, Kentucky Statutes, which reads as follows:

"When any property shall be devised subject to or upon the payment by the devisee to another of a sum of money or his doing some other thing, the latter shall have a lien on the legacy for the sum so to be paid, or for the value of the thing to be done."

But the statute quoted above does not answer the question here involved. It provides that when any property shall be devised subject to, etc., the question to be determined is whether or not the word "request" as used in the will should be given testamentary effect, or whether it was a mere recommendation and without any binding effect. Appellant also cites and quotes from 28 R. C. L., sec. 209, as follows:

"The courts are frequently called on to place a construction on the word 'desire' and equivalent words as used in a will whereby a testator makes a devise or bequest of his property and then expresses his 'desire' to the immediate devisee or legatee that the property shall be subsequently used or applied in a specified way. Words of recommendation, request, entreaty, wish or expectations addressed to a devisee or legatee according to many authorities will make him a trustee for the person or persons in whose favor such expressions are used provided the testator has pointed out with sufficient clearness and certainty both the subject matter and the objects of the intended trust. Such words when used in direct reference to the estate are held to be prima facie testamentary and imperative and not precatory."

It appears from the above quotation that all the authorities are not in agreement on the construction or effect to be given to the word "request" or like language and, furthermore, there is contained in the above quotation the proviso that such conditions will make the devisee a trustee for the person in whose favor such expressions are used, provided the testator has pointed out with sufficient clearness and certainty both the subject-matter and the objects of the intended trust. Appellant also cites the case of Deckard v. Deckard, 241

Ky. 329, 43 S. W. (2d) 1006, where the will involved contained the following provisions:

> "If I don't sell my farm before I die, it is to go to Arthur Deckard, and my daughter Nora Deckard is to have a home on it as long as she desires to stay and remains single."

It will be observed, however, that in the provision of the will quoted in the case supra, the testator plainly said that the farm "*is* to go to Arthur Deckard, and my daughter Nora Deckard *is* to have a home on it as long as she desires," etc. (Our italics.) The word "is" as used in such cases is a much stronger term than the word "request" and is tantamount to "shall" or that it is the testator's *will* that the devisee do the thing mentioned, and leaves no discretion to be exercised by the devisee or person to whom it is directed. But the words "request" or "desire" do not, as a rule, carry with them such force as to make them imperative or binding upon the person to whom they are directed. It may be conceded, however, that under some circumstances the word "request" when used in a will may be given mandatory or imperative effect, but to do so it must be made to clearly appear that such was the intention of the testator and, to arrive at such intention the will as a whole, the nature of the estate devised and all the circumstances must be taken into consideration.

It will be noticed that in the original will the testator directed that the landed estate he gave to his son Charles *is* to be held in trust by his executors for him and family, but he *is* not to sell nor incumber said land in any way. And in the devise to his son Joseph, the testator said that he (Joseph) *is* not to sell or encumber same by mortgage or otherwise and that he gave it to him in trust to enable him to support his family, etc. Then immediately following the above two provisions appears the sentence here in controversy, and it will be observed that the testator did not say that Henry *is* not to sell the farm, but merely used the word *request*. It is alleged in the petition and also stated in the briefs of respective counsel, that the testator was a lawyer of considerable experience and ability and understood the legal import of the language he used. And it is further disclosed by the will that the testator knew how to create a trust as is manifested in the will by the trusts he created in reference to the land devised to

his sons Charles and Joseph, and had he intended to create a trust in the devise to his son Henry, it is a reasonable presumption that he would have used more apt and forceful language by using the word "trust" as used in other parts of the will, or by saying that Henry *is* not to sell the land, instead of merely making a "request" that he not do so. In this connection we make reference to the case of Muir's Ex'rs v. Howard, 178 Ky. 51, 198 S. W. 551, 552, involving the construction of testator's devise to his son Charles. The court said:

> "In order to reconcile the discrepancies between the two clauses and to give effect to the intention of the testator, it is permissible for us to consider the circumstances under which the will was made. The testator was a learned and successful lawyer. He wrote the will with his own hand, knowing the legal significance of what he wrote."

In 70 A. L. R. page 329, it is said: "Where the testator reveals his knowledge of how to create a trust by a proper provision, a later provision which is precatory fails to show an intention to create a trust; and since a court of equity will not declare a trust except where it appears to be the clear intent of the devisor, no trust is created by the precatory provision." In re King's Estate (1927) 144 Wash. 281, 257 P. 848.

In Wood v. Wood, 127 Ky. 514, 106 S. W. 226, 230, 32 Ky. Law Rep. 408, quoting from Story on Equity Jurisprudence, the court said:

> "It will be agreed on all sides that, where the intention of the testator is to leave the whole subject, as a pure matter of discretion, to the good will and pleasure of the party enjoying the confidence and favor, and where his expressions of desire are intended as mere moral suggestions to excite and aid that discretion but not absolutely to control or govern it, there the language cannot and ought not to be held to create a trust. * * *

> "Accordingly, in modern times, a strong disposition has been indicated not to extend this doctrine of recommendatory trusts; but, as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peremptory sense."

In Estill v. Ballew (Mo. Sup.) 26 S. W. (2d) 778, 70 A. L. R. p. 321, it is said that the use of the word "request" does not necessarily create a precatory trust, and it never does unless in other parts of the will the plain intention is to create a trust.

Again, in 49 A. L. R. p. 16, the rule is thus stated: "The later English cases, however, and most of the American cases, have repudiated this rule as leading to results not intended by the testator, and in effect reverse the presumption, holding that words of request or expectation are presumably indicative of nothing more, unless the context, or the circumstances surrounding the testator at the time of making the will, show that he, though using the language of request, really meant to leave the legatee no option in the matter."

And in the footnotes at page 18 of 49 A. L. R. we find this excerpt taken from In re Barney's Will (1924) 239 N. Y. 584, 147 N. E. 205:

"It is only when a clear intent is shown that precatory words are accorded such force as to deprive the donee of an absolute right; otherwise words indicating a desire or request are held not imperative, but to be only words of entreaty or admonition, leaving obedience, exercise and performance to the sense of duty, gratitude, and discretion of the one to whom they are addressed."

See, also, In re Thistlethwaite (Sur. 1907) 104 N. Y. S. 264, wherein it is said that the court will not give precatory expressions the weight of an absolute command unless the intent of the testator that such should be their effect is beyond question.

In the present case the testator expressed his desire and intention to divide his estate in eight equal parts among his seven children and his wife, and in the devises made to his three sons, Charles, Joseph, and Henry, respectively, he required them to be charged with $10,000 each in the settlement of his estate, and in the codicil to his will he bequeathed to his daughter, Mary, the appellant, two sums of money aggregating the sum of $10,568. In the circumstances it is reasonably clear that the testator did not intend to encumber the farm devised to appellee with a life estate in favor of appellant and thereby place a restriction on the property

such as would prevent appellee from selling it or otherwise using it except as a home. The farm devised to appellee included the old home of the testator where his family was reared and at the time the will was written testator's wife, mother of appellant and appellee, was living. The record is not clear as to whether appellant was then single or married, but if married she had been married only a short time, and it was not known to the testator even before his death, which occurred not long after appellant was married, whether her marriage would be a success or what provisions would be made for a home for her and her support.

Taking into consideration the will as a whole, viewed in the light of the authorities cited herein, our conclusion is that the testator did not intend by the language used to devise to appellant any title to or interest in the landed estate devised to appellee, and the word "request" as used in the will was only a recommendation or an appeal to appellee's sense of right and duty to take care of his mother and sister in the event it became necessary for him to do so.

From what has been said it follows that the judgment of the chancellor is correct.

Judgment affirmed.