## Bosworth et al. v. Kilbourn et al.

May 2, 1947.

Chester D. Adams, Judge.

S. S. Yantis for appellants.

Stoll, Muir, Townsend, Park & Mohney for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

This action in the nature of a declaratory judgment suit was for the interpretation of the will of Anna R. Coyle, deceased.

Anna R. Coyle had one daughter, who intermarried with S. R. Yundt. Mrs. Yundt had predeceased her mother leaving two daughters, Mary Elizabeth Yundt Kilbourn, and Margaret Helen Yundt Bosworth, who are the granddaughters and only heirs at law of the testa-

trix. S. R. Yundt, the son-in-law, and father of the granddaughters, was named executor of the will.

Under Item 2 of her will, Mrs. Coyle left all of her property to her two granddaughters, share and share alike and in fee simple. Item 3 of the will, which is the particular portion we are called upon to construe, reads as follows:

"I request that my said granddaughters hold the estate together for their mutual benefit and the completion of the education of my youngest granddaughter, Margaret Helen; and I request that the one dying first leave her share to the survivor, unless she also leave issue surviving her. I further request that S. R. Yundt, the father of my said granddaughters, be provided for by them during his natural life by allowing him one-third of the annual net income from the estate I leave them. These requests are not to be interpreted as entailing the estate I leave, but to guide my said granddaughters in the use of same."

The court below ordered and adjudged in substance that Anna R. Coyle, by her last will and testament, created a trust in all her net estate; that the granddaughters as trustees shall hold the estate together for their mutual benefit during their joint lives; that the one dying first shall leave her share to the survivor, unless she shall leave issue surviving her; that in the event the one dying first leaves no issue, and should fail to leave her share to the survivor, then such share shall pass and go to the survivor; and that the granddaughters shall pay to the defendant, S. R. Yundt, their father, during his natural life, one-third of the annual net income from the estate. It was further adjudged that the defendant, S. R. Yundt, during the remainder of his life, has the power to sell and convey any of the real estate owned by the testatrix at the time of her death, which in his opinion, and in the opinion of the granddaughters, cannot be held profitably, and to buy in the names of the granddaughters such real estate as, in the opinion of S. R. Yundt and the granddaughters, will be profitable. From that judgment this appeal is prosecuted.

Since the judgment rests largely on the interpretation of the precatory words used in Item 3 of the will, we address ourselves, first, then to that portion of the

will. At the outset it may be said that there is considerable conflict of opinion as to the significance, force and effect of precatory words when used in a will. A trust created by the use of precatory words is frequently called a precatory trust. But, as pointed out in Williams v. Williams' Committee, 253 Ky. 30, 68 S. W. 2d 395, 398, this is more or less a misnomer. It might, however, be more accurate, in the language of some text writers, to call it "A trust based on inference from precatory words."

Certainly, if a trust is intended, it would be far better and less difficulty would ensue if the testator would employ mandatory words rather than precatory words. By the use of the latter he may or may not intend to create a trust. He may intend merely to impose, at most, only a moral obligation. Under the older view, even though the precatory words normally imported a moral rather than a legal obligation, they were treated as obligatory. The modern view more or less rejects this treatment. Accordingly, it is now generally held that to create a trust from precatory words, the court must be satisfied from the words themselves, taken in connection with other portions of the will and in the light of all the circumstances, that a trust was intended.

Appellees lean heavily on the Williams case above. The writer of the opinion in the Williams case, recognizing the existence of a contrariety of opinions, states that there are cases holding there can be no trust intended where the precatory words follow an absolute devise and other cases holding that there can. He then cites a long list of cases pro and con. While the Williams case held that a trust was intended, it, however, laid down some of the fundamental rules determinative of the weight of the precatory words. Therein is found this language:

"Cases can be found holding there can be no trust intended where the precatory words follow an absolute devise, and other cases holding that there can, but the rule seems to be that, although the property has been given absolutely, a trust may be intended by the use of precatory words, but it is not to be lightly imposed, as the gift in absolute terms is a strong indication that the subsequent precatory words are not obligatory. Ex-

pressed in different form, the gift of an absolute estate raises a presumption the subsequent precatory words create moral, but not obligatory, duties; this, however, is only a presumption that may be overcome by the nature of the precatory words and the intention of the testator as gathered from the whole will, viewed in the light of the seven guides copied above.''

As heretofore stated, there are numerous cases in which it is held that the use of precatory words created an implied trust, or precatory trust, and numerous cases wherein the use of precatory words were not held sufficient to create a trust. In the case of Hagan v. Muir, 268 Ky. 636, 105 S. W. 2d 820, 823, a case somewhat similar to the instant case, the testator, J. W. Muir, requested appellee not to sell the farm devised to him but to allow his mother and sister to live on it as long as it was their desire to do so. This court used the following language:

''But the words 'request' or 'desire' do not, as a rule, carry with them such force as to make them imperative or binding upon the person to whom they are directed. It may be conceded, however, that under some circumstances the word 'request' when used in a will may be given mandatory or imperative effect, but to do so it must be made to clearly appear that such was the intention of the testator and, to arrive at such intention the will as a whole, the nature of the estate devised and all the circumstances must be taken into consideration.''

In 54 Am. Jur., Trusts, Section 55, it is written:

''While the early English rule—that precatory words create a trust unless it appears to the contrary in the context—apparently still is, or at least has been, followed in a few American jurisdictions, the English and American majority rule is that precatory words are presumably indicative of no more than a request or an expectation, and do not create a trust unless the context or the surrounding circumstances at the time of the making of the trust instrument show that the trustor, although he used the language of request, really meant to leave the trustee (devisee, legatee, or legal donee) no option in the matter.''

Numerous cases dealing with the rules as to preca-

tory words may be found in the Annotations of 49 A. L. R. 14, 70 A. L. R. 326, and 107 A. L. R. 896.

It follows, then, that each case must be considered separately and particularly, keeping in mind the guides and tests generally applicable in determining the force and effect of precatory words. Generally precatory words are defined as words expressing direction, recommendation, desire, wish, request, and the like. When appearing they are more often deemed mandatory when directed to an executor, but generally when directed to devisees, will not be made imperative unless it appears that they were intended to create a legal obligation. They generally imply discretion unless a different sense is irresistibly forced by the context.

Properly to determine this case, aid must be sought by considering other portions of the instrument. Thus we may be enabled to determine if the intention of the testatrix was so strongly expressed as to impress upon the gift an absolute trust. Item 2 of the will is a gift in fee simple. The use of the words "share and share alike, and their heirs and assigns forever in fee simple" could not be more explicit, definite or positive. Generally but not invariably, it is held that where an estate is given absolute in terms, subsequent precatory words are not to be regarded as imperative.

Then follows Item 3 containing the four requests, which ends with the words that those requests are not to be interpreted as entailing the estate but as a guide to the granddaughters. The questions then arise: Was it the expressed intent of the testatrix to make her requests imperative, or was it no more than a mere suggestion for the purpose of guidance, and were these requests or suggestions negatived by the positive statement that the estate should not be entailed?

Appellees insist that by the use of the words "these requests are not to be interpreted as entailing the estate" the testatrix had in mind that she was dangerously close to creating an estate tail, and that it was used, no doubt, to show that it was not intended that the property should be limited to the issue of the granddaughter first dying, and then to her grandchildren in a direct line. They insist that an additional and stronger reason for the use of the words was that if her will could be con-

strued as entailing her estate, then under KRS 381.070, the estate would have been converted into a fee, and the granddaughters would have acquired a fee simple title free of any trust, encumbrance, or charge. This appears to us to be a forced construction of her intention. Had she felt as indicated by the appellees, it would have been much easier then to have created the trust outright by the use of plain and mandatory words. We are more inclined to believe that she had in mind the avoidance of any implications of inconvenience or trouble or involvement of the estate.

Attention might also be called to the fact that if she had in mind the legal aspects of "estates tail" she would have used this negative expression immediately following the second request of the will, and would have said this request is not to be interpreted as entailing the estate. It is significant that she says these requests.

Attention might be called to the fact also that Item 2 of the will is positive and definite. The next positive and definite statement is that the estate is not to be entailed. This negation is positive.

Again we quote from 54 Am. Jur., Section 57, dealing with the same subject above:

"It has frequently but not invariably been held that no trust will be implied from the use of precatory words, where a testator expressly declares that such is not his intention.

"A wide latitude of discretion given to a donee is inconsistent with an intention to dictate or command, and whenever a clear discretion or choice to act or not to act is given, a trust will not be implied. As it is sometimes put, precatory words cannot cut down or diminish an estate given absolutely. But since a trust may be created by an absolute gift to one in trust for another, there is in fact no repugnancy between an absolute gift and precatory words from which a trust may be inferred unless it clearly appears that the donee is to take the whole property beneficially. In some cases it is stated as the rule that absoluteness in a gift of property to a legal donee is a strong indication that precatory words are not obligatory."

Much is said by appellees as to Item 4 of the will

which designated S. R. Yundt as executor with power to sell the real estate. They insist this should also be given weight in determining the intention of the testatrix. We cannot agree with appellees in this contention. Obviously, at the time the will was executed these granddaughters were minors and the provisions as to the sale of the property under Item 4 of the will were directed particularly to the duties of the executor of the will, which according to statement in the brief of appellants, has been concluded, and Mr. Yundt has been discharged from his duties and liabilities as executor. We cannot see that this lends aid in any way to a determination of the intention of the testatrix.

If the chancellor was correct in his determination of the matter, then it was not the intent of the testatrix to devise in fee simple but to limit or modify the terms of the gift, thus having three devisees and granting a life estate to each and tying up the estate until after the death of the son-in-law and one of the granddaughters, thereby leaving the fee a contingent or defeasible one.

Applying then the general tests, we conclude that the requests were not used in an imperative sense but merely as a suggestion for the guidance of the granddaughters.

Wherefore, the judgment is reversed with directions to enter judgment consistent herewith.